## ROSENTHAL v. CELANESE CORPORATION OF AMERICA.

### No. 6.

District Court, D. Delaware.
April 16, 1940.

George T. Gill and Stephen Brooks Rosenthal, both of New York City, and Josiah Marvel, Jr., (of Marvel & Morford), of Wilmington, Del., for plaintiff.

Drury W. Cooper and Drury W. Cooper, Jr., (of Cooper, Kerr & Dunham), both of New York City, and Herbert L. Cohen, of Wilmington, Del., for defendant.

NIELDS, District Judge.

The action charges infringement of two patents issued to plaintiff. They are: No. 1,617,544 entitled "Manufacture and Treatment of Threads" issued February 15, 1927. Claim 4 alone is in issue. No. 1,620,233 entitled "Process of Making Thread" issued March 8, 1927, Claims 2 to 5 and 7 to 11 are in issue.

The defenses are invalidity and noninfringement. Invalidity is asserted for want of invention over the prior art and by reason of anticipation by the prior art: for failure to comply with Sec. 4888, R.S., 35 U.S.C.A. § 33, as to disclosure and because they disclose inoperative processes. Patent 1,620,233 is asserted to be invalid because (a) it contains matter inserted after the filing of the application upon which it was granted which application was not supported by an oath and (b) it involves double patenting when compared with patent 1,617,544. Defendant asserts that it does not infringe since (a) it does not use the alleged invention described in the patents, (b) its operations do not come within the terms of the claims of the patents and (c) that defendant has availed itself of the prior art.

Plaintiff is the patentee of the patents in suit but has had no experience in the production of artificial silk fibre from cellulose. Celanese Corporation of America, the defendant, manufactures rayon yarn and fabrics at Cumberland, Maryland.

Shantung silk or pongee is produced from wild silk worm cocoons. The threads are of irregular thickness, some portions being four times thicker than others. This irregularity accounts for the favor it enjoys in silk fabrics for dresses. The object of plaintiff's patents is the production of artificial silk that simulates Shantung silk.

Both patents cover substantially the same methods and products with a notable exception. This exception appears in patent No. 1,620,233, page 2, lines 3 to 37, where the patent speaks of producing the irregularities by a surging action of the spinning pump or by varying the pressure by means of an auxiliary pump. It reads: "In order to carry out and fully

attain the objects of my invention, I may control or vary the quantity of thread material thereby forming the irregularities, nubs, or thickened portions and I preferably, although not necessarily, do this in a predetermined manner so as more effectively to produce the new and desired results. This controlled or predeterminedly controlled varying of the quantity of material may be accomplished in many ways. As an example. I may obtain a surging action by providing for the irregular operation of the pump acting to force the viscose material through the dies, whereby the viscose material is more or less rapidly forced through said dies at the irregular impulse strokes of the pump. This has been found to effectively produce the intended results as the irregular impulses may readily be given to the pump through the use of cam arrangements. Such an arrangement would, moreover, lend itself to any desired predetermined control as the cam faces can be contoured to give any predetermined or controlled irregularities. As a further example of an efficient manner of carrying my invention into effect, I may associate with the main pump forcing the viscose material through the dies, an auxiliary pump which may vary the pressure at the extruding orifices of the dies, or the amount of material passing therethrough in a given time, or both, and thus again fully effectuate my present invention." It appears from the file wrapper that the above quoted passage was inserted on February 1, 1927, about 17 months after the application was filed. There is no basis in that application for any such process. The introduction by amendment of new matter not based on the original application and unsupported by supplemental oath invalidates the claims. Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34; Standard Oil Development Co. v. James B. Berry Sons Co., 3 Cir., 92 F.2d 386; Dooley Improvements v. Motor Improvements, D.C., 18 F.Supp. 340.

Patent 1,620,233 mentions two ways of accomplishing the object of the patent. First, by "depositing upon or causing to be associated with an already formed base thread, preferably though not necessarily of silk or artificial silk or upon an artificial thread simultaneously with its formation, masses of viscose of pasty consistency, at regular or irregular intervals, and in accordance with a predetermined plan to simulate the imperfect threads hereinbefore referred to. Where the imitated nubs are associated with an already formed thread, the viscose is preferably prepared in the form of a pasty mass, and made available as required." Second, "Instead of depositing the viscose at regular intervals upon a base thread and thereupon weaving the fabric, it is possible and often preferable to deposit the viscose in accordance with a predetermined plan of ornamentation upon a finished base fabric, that is, upon a fabric already woven."

It will be noted that viscose is the material selected by the patentee for making the thickened portions. The use of plastic masses for the purpose is stated to be objectionable. The patentee says: "Where I have attempted to produce ornamentations upon a fabric base by the deposit of a plastic mass thereon, I have found that the plastic masses hitherto employed by me have been of such a character that in order to give the desired ornamental effect, the deposited material had to be treated either before or after the deposition thereof, as by flocking, so as to produce the desired result."

The disclosure of patent 1,617,544 is similar to that of patent 1,620,233. All that has been said of the first patent applies to the other with the exception hereinabove set out at length.

 The patents in suit present no substantial novelty over the prior art. Patent to Chase No. 69,967 shows that as early as 1867 yarn having thick and thin portions was produced artificially. It was done by intermittently feeding roving fibres to the running thread. Where the additional threads are fed and twisted in, the thick portions are formed. Such threads are in common use in the textile art. Patent to Wood No. 928,831 relates to making yarn from cotton or other fibre. When the yarn is used as a filling it produces a fabric having the rough and uneven appearance of fabrics made from the silk of uncultivated cocoons as stated in the patent. A normal roving thread, i. e. the material from which the finished yarn is formed, is fed continuously by rollers through a guide to the spinning spindle. Meanwhile additional roving is fed intermittently by rolls that rotate only intermittently, thus producing thicker places in the yarn produced from the roving. Mercerized cotton fibre, if treated according to Wood, would result in a close imitation of pongee silk.

Claim 4 of 1,617,544. "4. The herein described process of making a thread to be employed in the production of a fabric to simulate that made from silk threads obtained from the irregularly formed thread of the uncultivated silk worm cocoon, said process including the formation of a thread from viscose and the association therewith of irregularities by predeterminedly varying the shape or thickness of the thread."

Claim 2 of 1,620,233. "2. The herein described process of making threads to be employed in the manufacture of fabrics to simulate fabrics made from silk threads obtained from uncultivated silk worm cocoons with irregularities thereon, said process consisting of adding to the thread material such irregularities by a controlled varying quantity of material."

The above claims are identical. They read directly upon the Chase and Wood patents. Those patents disclose the well-known commercial process of associating or adding extra material to yarns at intervals to simulate the appearance of yarn from wild silk. If the claims in suit be limited to artificial silk, the idea of doing with artificial silk what has been done with natural fibres would not involve invention.

If the claims in suit cover defendant's operations they are fully anticipated by patent to Chardonnet No. 394,559. He is the father of the art of producing artificial silk from cellulose and his process is used by the Tubize company in this country. In Chardonnet a spinning solution of nitro-cellulose is forced out of spinnerets in fine streams whereupon they are partially hardened by water. The resulting filaments are drawn by means of the hexagonal reel upon which they are wound. The reel being hexagonal draws the thread so that it will be uneven in thickness along its length. The variation in thickness is of the order of 15%. Chardonnet produces yarn having thick and thin portions. Plaintiff's expert testified the patents in suit cover any artificial silk yarn the diameter of whose filaments varies along its length. If so, Chardonnet clearly anticipates the claims in suit.

It was also shown that a great deal of development work was necessary to produce uniform yarn and great care had to be used to avoid making thick and thin yarn. Surely, it would not require invention to make thick and thin yarn out of artificial fibres of cellulose, since it was already within the knowledge of the art. Pongee silk had been imitated for years in other fibres. Neither the conception of the product nor the idea of obtaining it by making fibres thicker and thinner at regular intervals had any novelty.

In answer to an interrogatory defendant defined the method it employed in effecting the irregularities in its thread. This method may be summarized:

A solution of cellulose acetate in acetone is extracted at a uniform rate through a spinner in a spinning cabinet through which hot air flows to evaporate the acetone. The yarn leaves the cabinet and passes through the guide in a lifter to a uniformly rotating roller. The lifter is caused to move up slowly and drop suddenly. When the lifter drops suddenly the stretching between the spinning jet and the feed roller is automatically stopped thus producing a thick undrawn place in the filaments. The effect is the same as that obtained in the prior art patents of Chardonnet, Newton and Girard.

Defendant in practicing its process does not infringe for the following reasons:

1. It does not follow the teachings of the patents in suit. 2. Plaintiff's patents are restricted to viscose and do not cover defendant's cellulose acetate. 3. The claims of plaintiff's patent No. 1,620,233 are restricted by file wrapper estoppel to exclude defendant's operations.

Defendant does not use that part of patent 1,626,233 (page 2, lines 3 to 37) which is new matter relating to the production of irregular or surging flow of the spinning solution through the jets. In defendant's process the spinning solution extruded through and the filaments emerging from the spinneret are uniform without any surging. The variations in thickness are made subsequently without addition to or subtraction of material.

The patents in suit are restricted to viscose. This is the only substance mentioned in them. The statement of the objects of the invention is restricted to it. Defendant uses only cellulose acetate which is not like viscose. Defendant's expert correctly epitomizes the difference: "Yes, there are some terrific differences between viscose and cellulose acetate yarn. In fact I might say the differences are as great or greater than the difference between cotton and silk."

This court finds:

1. The patents in suit are invalid because they are anticipated by the prior art.

2. The patents in suit are invalid because they do not disclose invention.

3. Patent 1,620,233 is invalid because it contains new matter not sworn to by the patentee as a part of his asserted invention but added without oath during pendency in the patent office.

4. The defense of noninfringement is sustained.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The bill of complaint must be dismissed.

An order may be submitted.