## S. S. KRESGE CO. v. DAVIES.

## F. W. WOOLWORTH CO. v. SAME.

### Nos. 11642, 11643.

Circuit Court of Appeals, Eighth Circuit.

June 26, 1940.

Rehearing Denied July 25, 1940.

Kenneth S. Neal, of New York City (Page S. Haselton, of New York City, and John H. Sutherland, of St. Louis, Mo., on the brief), for appellants.

Thomas E. Gillespie, of St. Louis, Mo. (Howard G. Cook and Walter R. Mayne, both of St. Louis, Mo., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

These are patent infringement suits brought by the appellee, James O. Davies, as plaintiff below, owner of Davies patent, No. 2,040,599, for a certain invention in "superfluous hair removers." The bills of complaint were substantially identical, each alleging infringement. The answers denied the validity of the patent and likewise denied infringement. The suits were consolidated for purpose of trial. The lower court held the patent to be valid and infringed as to all of its claims by the sale of a sandpaper product known as the "E-Z Hair Removing Glove" manufactured by defendants. The parties will be referred to as they were designated in the lower court.

The specification of the patent states that: "This invention relates to a novel method of removing superfluous hair and to a means for practicing said method." It declares that the primary object of the patent is to provide a novel method for removing superfluous hair without the use of chemicals or sharp instruments, whereby the skin is not irritated and the growth of hair is not stimulated. It further says that additional objects are to provide a sheet of flexible material of suitable size and shape so that it can readily be manipulated and having one side provided with

abrasive material of predetermined fineness whereby the sheet can be rubbed over the skin surface so that the abrasive substance breaks up the cells of the hair, the degree of fineness of such abrasive substance being so determined that only the cells of the hair are acted upon and the cells of the skin are not affected thereby. It is further declared that this abrasive substance is preferably made from volcanic rock ground to a predetermined degree of fineness so that the abrasive surface is very effective in tearing down the hair structure without affecting the skin. It is also declared that by actual experiments it has been found that an abrasive substance formed of volcanic rock ground to 400A grade is the most suitable for this purpose; that this volcanic rock is a rare mineral consisting of the silicates of beryllium, manganese and calcium, and that the angularity of the ends of each crystal is substantially the same as the angularity of the scales of the hair and that: "This peculiar structure of the crystals permits the latter to engage the hair and break it down without affecting the cells of the skin." It further says that to remove the hair, the pad described in the drawings is placed on the skin with the abrasive surface contacting the skin and is then rubbed over a small area, only gentle pressure being used; that this rubbing action causes the abrasive surface to act upon the cells of the hair so that the hair structure is broken down, but as the abrasive surface is of considerable fineness it does not affect the skin or cause irritation thereof. It further says that the remover can be used without danger or injury to the skin and that no preparation or treatment of the skin is required either before or after the use of the remover; that the remover not only does not injure the skin but on the contrary, due to the massaging action, stimulates it and maintains it in a smooth and healthful condition.

There are nine claims in the patent. For the purpose of the issues here, they are so near alike that claim 1 may be taken as typical. It reads as follows: "An article of manufacture, comprising a hair remover for personal use, including a flexible carrier adapted to be rubbed over the hairy surface and having on its face an abrasive substance adapted to engage and break down the hair structure, said material being of a fineness and character to interengage with the hair structure but in normal use incapable of scratching or impairing the skin, and said flexible carrier being adapted to be held by the hand and conform under pressure of the latter to the hairy surface over which it is moved."

Claim 2 differs from claim 1 only in that the abrasive surface is said to be "ground volcanic rock." Claim 3 calls for ground volcanic rock of a grade of approximately 400A; and claim 4 is similar to claim 1 but a little more in detail as to how the flexible carrier is formed to underlie the hand. Claims 5, 6, 7, 8 and 9 are referred to as "method claims," with instructions as to how the device should be used. Each of the descriptive claims contains the qualifying words, "in normal use incapable of scratching or impairing the skin," and these words are also found in each of the so-called method claims.

Defendants' E-Z products use regular commercial silicon carbide as the abrasive, in the size of grain designated in the trade as "400." From the physical exhibits it appears that defendants' product presents two exposed sandpaper surfaces and is strikingly similar in shape and construction to the device shown in the Bayley patent, No. 2,046,240, not here involved, and under which plaintiff claims no rights. Defendants' product has been made substantially in the form disclosed in the Bayley patent and merchandised by slipping it over a hand-shaped piece of cardboard. It has a red-colored layer of paper glued to the back of the sheet of paper which carries the abrasive grains.

In considering the question of infringement, we must compare the accused product or device with the teaching of the patent in suit as disclosed by the specifications and claims, rather than with plaintiff's commercial device. A study of the file wrapper discloses that plaintiff limited all his claims to an abrasive "in normal use incapable of scratching or impairing the skin." Other claims not so limited as to the quality of the abrasive were presented but rejected and cancelled; in fact, even when so limited the patent office refused to grant the patent, as did also the Supreme Court of the District of Columbia, and in authorizing the patent, Davies v. Coe, 65 App.D.C. 345, 83 F.2d 602, the Court of Appeals of the District of Columbia said: "The article of manufacture is a flexible abrasive paper adapted to be rubbed over a hairy surface, the abrasive substance being of such fineness and character as to

710

engage and break down the hair structure without scratching or impairing the skin."

In the course of the court proceedings, plaintiff testified with reference to the superiority of his alleged non-injurious sandpaper over the commercial sandpapers. He among other things testified:

"The minute they (prospective purchasers) would see the device they would form the same opinion—they would all just see a piece of sandpaper. They would say, 'Why, you are trying to sandpaper hair off.' It is true you can take sandpaper and sandpaper hair off, but you will take the skin off with it. I have something here that I have gotten up which will enable you to remove hair without doing injury to the skin and the follicle.

"The effect of this competition since I taught the public to use my device has been to retard me in my progress on sales to a great extent, from the fact that those people who make imitations use plain abrasive paper, paper made for commercial use; and although when they use it, it will remove hair, it will not repeat because the type of abraser they use is put on with glue, such as all commercial papers, and is dry and the little particles that form on the surface come out and break loose and find their way into the/pores of the skin.

"If it wasn't for the item sold in the 10¢ store we would have everybody. A woman will come in and say, 'Oh, no, I wouldn't use that. I bought one from the 10¢ store and you see what the results are. I used it, but I have sore arms and sore legs.' Now, the trouble has been that when you take a woman who buys an article like that, when we get hold of her and try to educate her to use it, she is suspicious and hard to convince. It works a hardship on us. Our sales have repeated, but in their sales, they sell one time and they are done."

It was plaintiff's contention throughout the proceedings culminating in the grant of his patent, that there was nothing in the prior art anticipating either the product or method, nor any flexible sheet coated with an abrasive intended or capable of being used in removing hair from the body as claimed. The basis for granting plaintiff's patent was that the abrasive material used by him was "in normal use incapable of scratching or impairing the skin." It was known in the prior art that hair might be removed by the use of commercial abrasive paper. Plaintiff, in a letter dated August 21, 1933, addressed to the Kresge Company, among other things said:

" * * * I desire to make it plain to you, as I have to many other buyers, that practically everyone knew that you could remove hair with regular commercial abrasive paper. This method had been tried out before but the results have always been that in removing hair great injury was brought to the skin. * * *

"I wish to state that those who are trying to imitate our item are working under the wrong impression as plain commercial paper will not prove satisfactory. * * * "

True, it appears from the testimony that plaintiff in his commercial product has in fact used regular commercial sandpaper of the prior art, and has never, so far as disclosed by the record, used the rare mineral trimerite described in his patent. After testing many samples which he said could be used for removing superfluous hair but were not satisfactory, he finally adopted a product of the Minnesota Mining and Manufacturing Company known as Wetordry Tri-M-ite of the 400A grade. This is a silicon carbide. This paper has been a regular commercial product of the Minnesota Mining and Manufacturing Company sold generally on the market for many years along with similar sandpapers' having various thicker and less flexible backing. This paper has been a well known sandpaper using silicon carbide as an abrasive since 1925. Plaintiff himself so testified in this suit. But, as before observed, we can not determine the question of infringement by comparing the accused device or product with the commercial devices. We are rather interested in the teaching of the patent.

According to plaintiff's sworn testimony and admissions, commercial sandpaper and commercial abrasives are injurious when applied to the skin, and hence, not incapable in normal use of injuring the skin. It is plain that defendants' products use the prior art commercial silicon carbide sandpaper. Plaintiff, throughout the prosecution of his patent proceedings, contended that this was injurious and induced the granting of his patent on the representation that he had a device and process which is "in normal use incapable of scratching or impairing the skin." Having limited all his claims to such an abrasive and having accepted a patent containing such limitation, the limitation imposed must be strictly con-

strued against him. Reflectolyte Co. v. Luminous Unit Co., 8 Cir., 20 F.2d 607. Plaintiff can not successfully urge that his patent is broad enough to cover silicon carbide as an abrasive. Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868; General Electric Co. v. Wabash Appliance Co., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34.

In Holland Furniture Co. v. Perkins Glue Co., supra, the court said [277 U.S. 245, 48 S.Ct. 479, 72 L.Ed. 868]: "But an inventor may not describe a particular starch glue which will perform the function of animal glue and then claim all starch glues which have those functions, or even all starch glues made with three parts of water and alkali, since starch glues may be made with three parts of water and alkali that do not have those properties. * * * That the patentee may not by claiming a patent on the result or function of a machine extend his patent to devices or mechanisms not described in the patent is well understood."

In General Electric Company v. Wabash Appliance Co., supra, the court said [304 U.S. 364, 58 S.Ct. 903, 82 L.Ed. 1402]: "But the vice of a functional claim exists not only when a claim is 'wholly' functional, if that is ever true, but also when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty."

The clause describing the abrasive as one which is "in normal use incapable of scratching or impairing the skin" does not designate the abrasive, but only how it is supposed to function. Such a claim may not be invoked to preempt products outside the scope of the disclosure of the patent.

As defendants' product does not infringe upon the teaching of plaintiff's patent, we need not concern ourselves as to its validity.

We have put aside as unnecessary for the decision of this case the fact, of which we may take judicial notice, that the plaintiff has stipulated with the Federal Trades Commission that its commercial product, alleged to conform to its patent, shall not be sold in interstate commerce under representations that its product "does not irritate the skin."

Confessedly, defendants' product is not of a character that is "in normal use incapable of scratching or impairing the skin." Their device is not so clearly in conflict with the teaching of plaintiff's patent as to warrant a finding of infringement. The novelty obtaining in the device or product described in the patent is not found in defendants' product.

The decrees appealed from are therefore reversed and the cause remanded with directions to enter decrees dismissing plaintiff's bills of complaint on their merits.