**WRIGHTWAY ENGINEERING COM-
PANY, Appellant,**

v.

**MELARD MANUFACTURING CORPO-
RATION, Appellee.**

No. 82, Docket 23164.

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1954.

Decided Feb. 8, 1955.

George N. Hibben, Chicago, Ill., Ralph L. Chappell, New York City, Albert J. Fihe, Burbank, Cal., Kenyon & Kenyon, New York City, for appellant.

Will Freeman, Blair, Freeman & Molinare, Chicago, Ill., Ethel Shames, New York City, Norman Lettvin, Chicago, Ill., for appellee.

Before CLARK, Chief Judge, and L. HAND and MEDINA, Circuit Judges.

L. HAND, Circuit Judge.

Judge Galston's opinion [1] has stated the facts in such detail that it will be unnecessary for us to repeat them; in what we say we shall assume an acquaintance with it. He found that the defendant infringed the claims in suit, but that they were invalid, because the specifications only disclosed a variant from the prior art that would not support a patent. Since we agree with his second conclusion, we do not find it necessary to decide the first. The plaintiff stakes the invention upon the fact that none of the earlier disclosures showed the element that the water, as it passed through the holes, "20," in the "perforated disk, 18," remained in the form of jets until it struck upon the "tapered plug, 28." Instead of this the jets had always been fused into a single body of water in the annular space, substantially triangular in cross section, whose top is the "disk, 18," whose side is the cylindrical "skirt, 22," and whose bottom is the sloping wall of the "plug, 28" : i. e., the "chamber." In the patent in suit on the other hand air is sucked through the annular opening between the lower edge of the "skirt, 22," and that of the "plug, 28," and the water begins to be aerated within the "chamber" both before and after the jets strike the sides of the "plug, 28." Obviously, if the "chamber" is always full of water, no aeration can take place in it; and whether the "chamber" will fill up depends upon whether water flows out in greater velocity than it flows in. That in turn depends upon whether the combined area of the holes, "20," in the "disk, 18" is less than the area of the annular opening between the "skirt, 22" and the lower edge of the "plug, 28." Only when

1. 119 F.Supp. 506.

that is true, will the water form in jets in the "chamber" and remain so until it strikes the "plug, 28". This, the plaintiff urges, is not only a new, but a valuable, improvement in "aerators" of the kind involved.

The claims do assume that there will be jets within the "chamber," and that as jets they will "impinge" upon the "plug, 28"; and the plaintiff's expert swore that it was within the compass of the ordinary craftsman to know how to keep the "chamber" from filling by regulating the relation of the two areas, as we have mentioned. The specifications are not, indeed, as plain a disclosure as one could wish of this feature of the invention. All that appears is that, "when water is flowing through the pipes 10 and 14, and through the perforations 20 in the disk 18, an aspirating effect is produced whereby air is drawn in through the slots 24 and mixed with the water." So far it is consistent with the disclosure that aeration will not commence till the water emerges from the "chamber." (Col. 2, lines 43–48). This language is immediately followed, however, by these words: "This aspirating and mixing effect is enhanced by a tapered plug, 28," and that presupposes that the process begins in the "chamber." However, although the specifications are not too clear, we do not find it necessary to hold that the disclosure as a whole is not "full, clear, concise, and exact" enough to satisfy § 112, Title 35, U.S.C., though we were to take as authoritative the declaration in Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 59 S.Ct. 8, 12, 83 L.Ed. 34, that the scope of a patent "cannot be enlarged by claims in the patent not supported by the description." We shall therefore assume that, even disregarding the language of the claims, the description that we have quoted from the specifications demanded a "chamber" such as we have described.

The prior art did not indeed disclose exactly that kind of "chamber"; but there were a number of devices for accomplishing the same result. For example, the patent, issued to Aghnides, in 1940—No. 2210846—disclosed a "chamber," square in cross section, in which "means are provided in the path of the stream of water, after it leaves the aperture or apertures and before it discharges at the outlet end, for finely breaking up the water and offering sufficient resistance for thoroughly mixing it with air" (page 1, lines 17–23). One such "means" is the "perforated screen, 16" that "admits the water into the casing 14 in the form of a plurality of jets" (page 1, lines 35–37). The water sucks air into the "chamber" through "ports" where it mixes with the water; and at the bottom of the "chamber" is another "screen, 20" (page 1, line 39), or two "screens 40, 42," that form the exit. This implies that the "chamber" is never filled with water as it is in the patent to Gettins, No. 2564060, and probably also in Goodrie's earlier patent, No. 2134182. On the other hand there is no "plug, 28" in Aghnides' chamber that creates an annular discharge opening and avoids clogging which is said to occur when screens form the bottom of the "chamber," though it is to be noted these are optional also in the patent in suit (Col. 3, lines 19, 20 and lines 51–53).

Thus, the validity of the patent may be said to depend upon whether it was an "invention" to substitute "plugs," like those disclosed in several of earlier patents, in place of the bottom screens of Aghnides; for equivalents of the "skirts, 22" of the patent in suit, extending below the air ports, were present in Goodrie's earlier patent. It is true that the disclosure has had a substantial sale, and we will assume that it was an improvement upon what had gone before; but we think that it was one of those combinations of existing elements that are not entitled to a monopoly. We shall not try to add to the definitions of what is meant by "invention." In the end probably it is doubtful whether more can ever be said than that the court thinks that the combination before it does, or does not, deserve a patent, though we

are sure that the standard has become more exacting in recent years. It has for long been the custom of courts in deciding the importance to be attributed to a new combination to charge the applicant "with a knowledge of all preexisting devices"[2] and then to ask how much originality it took to make the change. The plaintiff argues that the screens used by Aghnides readily clogged and had to be cleaned. Faced with such a difficulty it does not appear to us that it would have demanded more than the most commonplace ingenuity to turn to Goodrie's earlier disclosure for a solution. In any event it is clear to us that the Supreme Court would not to-day hold such a combination patentable.

Judgment affirmed.

---

2. Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 485, 493, 20 S.Ct. 708, 711, 44 L.Ed. 856.