## ATLAS SPECIALTY MANUFACTURING COMPANY, Plaintiff,

v.

## FARBER BROTHERS, INC., Defendant.

### Civ. No. 3795.

United States District Court
W. D. Tennessee, W. D.

July 12, 1961.

W. A. Snow, Chicago, Ill., John T. Wilkinson, Jr., Memphis, Tenn., for plaintiff.

Heiskell Weatherford, Jr., Memphis, Tenn., Donald R. Wellford, Memphis, Tenn., for defendant.

BOYD, Chief Judge.

This is an action for patent infringement and an accounting by Atlas Specialty Manufacturing Company against Farber Brothers, Incorporated. The plaintiff is an Illinois corporation, having its principal place of business in Chicago, and is engaged in the manufacture of seat cushion covers adaptable for use in connection with automobiles seat cushions. Defendant is a Tennessee corporation with its place of business in Memphis, and is engaged in the manufacture, distribution and sale of covers for automobile seats.

The plaintiff, in addition to its charge of infringement of the two claims of the patent in suit, No. 2,844,192, charges the defendant with unfair competition on account of the purchase by defendant from one Clement Rhodes of Jacksonville, Florida, of a set of patterns for seat covers previously commercially sold by plaintiff.

The defendant for answer denies the things charged against it and avers that the patent in suit is invalid for the following reasons: (a) that it fails to point out and distinctly claim the subject matter which the applicant regarded as his invention; (b) that the claims are indefinite in failing to define in proper

definite construction the best means by which the applicant contemplates carrying his purported invention into operation, and particularly in failing to define in the specification the terminology used in the claims, "the forward edges of the end flaps being in a straight coplanar relationship with each other and with the base fold line of the front flap", and further in that the specification fails to point out and define the limitation appearing in the claims, "the body part having triangular sections cut out therefrom along the fold lines of the front flap and the respective end flaps inwardly from the juncture of the front edges of the end flaps and the adjacent edge of the front flap and the respective angles formed by the fold lines of the end flaps and the front flap," there being no indication in the specification or upon the drawings of any such fold lines as are so referred to in the claims; (c) that the claims are invalid since the device which they are said to cover was manufactured and sold by the plaintiff in public use and sale more than one year before the invention as defined in the claims of the patent was finally disclosed to the Patent Office contrary to the provisions of 35 U.S.C.A. § 102(b); (d) that the purported invention of the claims of the patent in suit is fully anticipated by King 2,-757,389; (e) that the purported invention of the patent in suit lacks invention over the disclosure of King, particularly when taken in connection with Ridenhour 2,605,483; (f) that the purported invention is not patentable because the subject matter was such as to be obvious to any person having ordinary skill in the art.

Defendant in its amendment to answer has denied that it unfairly competed or competes with plaintiff, since, while it purchased a set of patterns from one Clement Rhodes, defendant was aware that these patterns had been turned over to Rhodes by his former employers, Superior Auto Fabrics Company of Chicago, and were legitimately his property, but did not actually know the source from which or the manner in which the Superior Company had derived these patterns.

The Court sitting without a jury heard this cause upon the pleadings, the proof and briefs of counsel and makes the following:

### Findings of Fact

1. Plaintiff is the owner of Patent No. 2,844,192, issued in the name of Louis R. Marquez, under date of July 22, 1958.

2. Sometime between December 1955 and February 1956 as the use of clear plastic material became popular in the automobile seat cover industry the plaintiff instructed pattern maker, Marquez, to develop a pattern for a seat cover from such clear plastic material which would, among other things, eliminate stitched seams in the seat cover. After a number of attempts at fittings on automobile seats, a job comparable to that done by a tailor folding, cutting, fitting and sewing a suit upon a person, Marquez developed a pattern which is the subject of the patent in suit.

3. An application for patent, entitled "Seat Cover", was filed in the name of Louis R. Marquez on June 25, 1956. This application included one sheet of drawings, a specification purporting to describe the invention, and a set of 14 claims. The specification of the application as filed, and also as carried forward into the patent in suit, did not purport to describe or explain in any manner what was meant by the phrase "the forward edges of the end flaps being in substantially straight coplanar relationship with each other and with the base fold line of the front flap." Neither the specification nor the drawing purport to show or define where is the base fold line of the front flap or where are the fold lines of the end flaps of the device. In addition the specification, as filed and as carried forward into the patent in suit, does not purport to define the location of the triangular sections cut out from the body part, particularly with respect to the "respective angles formed by the fold lines of the end flaps and the front flap",

since the specification does not at all define where are such fold lines. The Patent Office rejected all of the claims of the application in action dated March 15, 1957, the Examiner particularly pointing out that he did not consider that the provision of a cut extending inwardly from the edges of the flaps was of patentable moment. On June 19, 1957, a response to the Patent Office action just noted was filed, cancelling the claims of the original application, and thus, accepting the Examiner's interpretation of them.

4. In the response filed June 19, 1957 by the plaintiff a new group of claims, numbered 15 through 20, inclusive, was inserted. Of these, Claims 15 through 17, inclusive, related to a seat cushion cover in flat condition, and Claims 18 through 20, inclusive, related to a seat cushion cover in a folded up permanent condition.

5. The claims presented in the response of June 19, 1957 were, by Patent Office action of September 27, 1957, all rejected. In this action the Examiner, relying upon Ridenhour 2,605,483, pointed out, "It is not considered that to assemble the covering of Ridenhour so that the adjacent flaps overlap, and to provide the body part with a triangular section cut out therefrom adjacently inward of each juncture of the adjacent edges of the flaps, is of patentable moment. Such modification is considered to be well within the scope of one skilled in the art and would not amount to invention."

6. The applicant accepted the correctness of the Examiner's action by filing on January 21, 1958 a response to the Patent Office action in which all of the claims previously in the case were cancelled and a single claim, 21, which has matured into Claim 1 of the patent in suit, was entered. In this Claim 21 for the first time applicant introduces and first presents to the Patent Office the specific definition of the invention which is now claimed. In Claim 21 it is for the first time pointed out "the forward edges of the end flaps being in a straight coplanar relationship with each other and with the base fold line of the front flap", as well as defining "the body part having triangular sections cut out therefrom along the fold lines of the front flap and the respective end flaps inwardly from the juncture of the front edges to the end flaps and the adjacent edges of the front flap and the respective angles formed by the fold lines of the end flaps and the front flaps". No amendment to the drawings of the application or the specification was then made, or has since been made. The specification is silent as to what is meant by the terminology of this language newly inserted into the claim, and the definition of the triangular cutouts is by this claim made relative to the fold lines of the end flaps and of the front flap although the specification is silent as to where are these particular fold lines.

7. In support of Claim 21 Applicant represented to the Patent Office "small though they may first appear the points of which Applicant's cutout form differs from the Ridenhour bed sheet are critical to the attainment of Applicant's objective * * *." The Examiner thereupon after the presentation of this last amendment, issued a notice of allowance.

8. Following the issue of the notice of allowance Applicant submitted an additional claim which has matured into Claim 2 of the patent in suit. This claim included language substantially similar to that quoted above from Claim 21 to the following effect "the forward edges of the end flaps being in substantially straight coplanar relationship with each other and with the base fold line of the front flap", and further "the body part having triangular sections cut out therefrom along the fold lines of the front flap and the respective end flaps inwardly from the juncture of the front edges of the end flaps and the adjacent edges of the front flap and the respective angles formed by the fold lines of the end flaps and the front flap". This claim was added by amendment filed April 9, 1958. No change in the specification or in the drawings of the application was made.

9. The Applicant represented to the Patent Office that he was entitled to adequate coverage "for the critical feature of his disclosure for a seat cover which clearly and patentably differentiates from the prior art disclosures. That feature is the

*"triangular cutout sections*

'along the fold lines of the front flap and the respective end flaps inwardly from the juncture of the front edges of the end flaps and the adjacent edges of the front flap and the respective angles formed by the fold lines of the end flaps and the front flap.' "

He further represented to the Patent Office in supporting the allowance of these claims that "however, none of these cutouts are located as so definitely stated in the above quoted language in the allowed claim and the one here presented, i. e., they are not embodied in the body portion per se. * * * "

10. The patent in suit was finally issued July 25, 1958. Each of the claims in the patent when issued related only to a device for a seat cushion cover described in flat layout condition and prior to folding up into the form into which it might be mounted upon a seat cushion. This is borne out by the limitations appearing in the claims, in particular each of the claims referring to "a seat cushion cover adapted for permanent formation", the term "adapted" indicating that the cover was not in folded up condition the terms of the claims further providing that the flaps "being foldable transversely of the body part for binding along the adjacent straight edges of the flaps preparatory to having the cover overlaid on a seat cushion", indicating that the flaps were not yet folded but were flexible and adapted to be folded, and furthermore that they would have to be folded in preparation for ultimate formation into the final fitting form. More particularly the claims each define the seat cushion cover as including "the body part having triangular sections cut out therefrom", and it is clear that the triangular

sections only appear in the device when it is in unfolded condition, since after it has been folded into a finished or formed up seat cover the triangular sections no longer are apparent and have been merged into various seams.

11. During the prosecution of the application which matured into the patent in suit the Patent Office considered Phillips 2,172,890, Ridenhour, 2,605,483, Field 2,228,948 and British Patent 183,294. Only Phillips and Ridenhour were applied by the Examiner to any of the claims. The Examiner did not consider any other claims from analogous arts showing the formation of covers with rounded corners such as Patton 305,710, Smith 634,507, Smith 693,169, and more particularly the Examiner did not consider King 2,757,389. As has heretofore been pointed out it was stressed on behalf of Applicant that the critical feature of his disclosure for a seat cover resided in the triangular cutout sections which he has defined in the Claims of the patent, although not in the specification of the patent, as "along the fold lines of the front flap and the respective end flaps inwardly from the juncture of the front edges of the end flaps and the adjacent edges of the front flap and respective angles formed by the fold lines of the end flaps and the front flap."

12. None of the references which were cited by the Examiner and considered by him in the determination of his ruling upon the present application which matured into the patent in suit discloses triangular cutouts which are embodied in the body part of the seat covers.

13. The patents to Patton, and to Smith '507 and Smith '169, heretofore referred to, clearly show the utilization of portions cut into the body part of a cover or other similar object in order to prevent the material from puckering at the corner of such a cover or similar part when the same is folded together, and also to provide a rounded corner when the end flaps are joined together.

14. King patent 2,757,389, strongly relied upon by defendant, relates to a bed sheet and is in an art which is analogous

to the seat cover art which has been recognized by the Patent Office since the Examiner cited Ridenhour, a bed sheet patent.

15. The claims of the patent in suit relate to a seat cushion cover in flat, layout, or unfolded form. A simple comparison of the claims of the patent in suit with the first drawing of the King patent which is in flat, unfolded layout condition shows that every element mentioned in the claims is disclosed in the King patent. While the claim of the patent in suit refers to fold lines it is silent as to where the fold lines are, whereas the King device accurately defines the position of the fold lines and in addition shows the relationship of the triangular cutout embodied in the body part of the device of the King patent with respect to the location of these fold lines.

16. Marquez patent in suit has stressed that the particular location of the triangular cutouts is a critical feature of his device. The King patent describes and defines the triangular cutouts shown therein with much more accuracy than is in the description of the same triangular cutouts found in the Marquez patent in suit.

17. The King patent, in the drawings of the patent and by way of the specific definition of structure contained in the specification of that patent, shows the so-called critical feature of Marquez, namely, the triangular sections cut out from the body part of the juncture of the end flaps and the front flap, and particularly in the King patent being demonstrated by dotted lines as being inwardly of the angle of intersection of the fold lines of the end flaps and the front flap.

18. As the King patent shows and discloses every feature which is defined in Claim 2 of the patent in suit, the King patent anticipates the invention claimed in Claim 2 of the patent in suit.

19. The King patent was issued upon an application filed August 10, 1953, showing a completion of the invention referred to therein, and long prior to any commencement of activity on the part of the plaintiff or of the patentee Marquez with respect to development of the seat cushion cover which eventuated into the patent in suit.

20. The alleged inventive feature of the Marquez patent was known by King, the patentee of the King patent, before the alleged invention thereof by Marquez.

21. The device allegedly covered by the patent in suit was on sale at or about the time of the original filing of the application on June 25, 1956 and at the latest prior to the advertising of such device by the plaintiff in brochures and trade publications between August 1956 and December 1956. Applicant first disclosed to the Patent Office the details of the invention upon which the patent in suit was granted in amendment filed January 21, 1958 and in which the essential character of the description in the claim was pointed out.

As a result it follows that the alleged invention herein was in public use and sale between June and December 1956, more than one year prior to the disclosure of the said invention to the Patent Office.

22. While defendant competes with the plaintiff, it has made no attempt to pass off its goods as those of the plaintiff and has, in fact distinctly marked its merchandise containers in such manner as to avoid confusion as to source.

Conclusions of Law

I.

The Court has jurisdiction of the parties and of the subject matter of this cause.

II.

■ A patent allowed by the Patent Office is presumed to be valid, and the burden of establishing invalidity of same rests upon the party asserting it. To meet this burden requires clear and satisfactory proof. Title 35 U.S.C.A. § 282; Harmon v. Scott, D.C.Ohio 1950, 90 F. Supp. 486, affirmed 6 Cir., 195 F.2d 916, certiorari denied 343 U.S. 965, 72 S.Ct. 1059, 96 L.Ed. 1362.

**66**

### III.

■ There is, however, no presumption of validity over prior art which the Patent Office does not consider. O'Leary v. Liggett Drug Co., 6 Cir., 1945, 150 F.2d 656, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467.

### IV.

■ The defendant has clearly met the burden in this proceeding by showing the claims of the patent in suit to be invalid because they are indefinite and fail particularly to point out and distinctly claim that which the purported inventor regarded as his invention. Schriber-Schroth Co. v. Cleveland Trust Co., Chrysler Corporation, 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34.

### V.

The defendant has also clearly met the burden herein of showing invalidity by proof of prior art patents pertinent to the issues which were not cited or considered by the Patent Office, and further in this connection, aside from Phillips 2,172,890 and Ridenhour, 2,605,483, the Patent Office did not consider claims from analogous art patents showing the formation of covers with rounded corners.

### VI.

The claims of the Marquez patent in suit, 2,844,192, are also invalid because they are anticipated as to all of the subject matter therein by King 2,757,389. Further, the claims of the patent in suit are invalid because of lack of invention over the King patent, and more particularly so when viewed in conjunction with Ridenhour 2,605,483, modified by the teaching of the King patent.

### VII.

The patent in suit is also invalid as it merely combines an aggregation of old elements of the prior art which adds nothing to the total stock of knowledge, and as such does not constitute patentable invention within the meaning of the patent laws. The device as set forth in the patent in suit is the result of mechanical skill and not the result of invention, as the methods employed by the patentee were only such as would reasonably have occurred to any skilled tailor or artisan in the trade under similar circumstances. Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed 162; Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600.

### VIII.

The claims of the patent in suit are invalid because the subject matter of the device assertedly covered by these claims was in public use and on sale more than one year before the invention was disclosed to the patent office. Title 35 U.S. C.A. § 102; Muncie Gear Works v. Outboard Machine & Manufacturing Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

### IX.

■ The defendant has in no way been unfair in its competition with the plaintiff since no confusion of customers as to origin of its merchandise has been shown. West Point Manufacturing Co., v. Detroit Stamping Co., 6 Cir., 1955, 222 F.2d 581, certiorari denied 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749.

### X.

■ There is no evidence of bad faith by the plaintiff in bringing this action, and this is in no wise an exceptional case which calls for the awarding of attorney fees. Turchan v. Cincinnati Mill Mach. Co., 6 Cir., 1953, 208 F.2d 228; Title 35 U.S.C.A. § 285.

### XI.

Since the patent in suit is found to be invalid for the reasons herein stated, judgment dismissing the case at the plaintiff's cost will be entered.

### Order for Judgment

Judgment in accordance with the foregoing Findings of Fact and Conclusions of Law will be entered within five days.