**Thomas C. RICE,**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 53–178.

United States District Court
D. Massachusetts.

March 29, 1956.

Melvin R. Jenney, Robert J. Keating, Kenway, Jenney, Witter & Hildreth, Boston, Mass., for plaintiff.

Brinley M. Hall, Choate, Hall & Stewart, John L. Hall, Boston, Mass., Byerly, Townsend & Watson, C. Blake Townsend, New York City, for defendant.

FORD, District Judge.

This is an action for infringement of U. S. Patent No. 1,977,773, issued October 23, 1934 to plaintiff Rice, for a tappet valve clearance compensator. Only claim 9 of the patent is involved in the present action. Defendant moves for summary judgment holding claim 9 of the patent invalid.

In the construction of the train or gear by which motion is transmitted between the cam and the valve stem of an internal combustion engine it is necessary to provide a certain amount of clearance between the metal parts to allow for expansion when these parts become hot during operation of the engine. This means that when the engine is cold when first started, there is some play between the parts which would result in valve noise. The general idea of reducing this noise by interposing a small oil chamber somewhere in the valve train to take up this play between the metal parts is an old one. Cf. Bollee, U. S. Patent No. 1,062,580, issued May 27, 1913.

The Rice patent discloses a particular structure involving the insertion of such an oil chamber into a well known type of valve train, the object being to transfer the clearance in the operating mechanism to this oil cushion chamber, and also to prevent admission of air to this chamber, since when air, which is compressible, is admitted, the efficiency of the oil chamber as a cushion is reduced. Claim 9, which is directed particularly to this air exclusion feature, reads as follows:

9. The combination of an oil chamber, means by which the oil chamber drains oil out very slowly, said oil chamber having an oil inlet and means for conducting a stream of oil to flow over said inlet in a volume greatly exceeding the drainage from the chamber, whereby any air bubbles in the stream of oil are prevented from entering said chamber.

As shown in the figures and specifications of the patent, the Rice construction has a small oil chamber located in an oil valve body in the valve train. This chamber is closed at the bottom by a plunger provided with a packing ring. During operation a small amount of oil leaks out of the chamber past this ring. At the top of the oil chamber is a small hole which is closed by an oil valve in-

side the chamber. When this valve is open oil can enter the chamber through the hole from a V-shaped oil reservoir formed by the concave top of the oil valve body, the inlet hole being located at the point of the V.

Bearing on an adapter or extension at the top of the oil valve body is a push rod which connects this part of the mechanism to the rocker arm of the intake or exhaust valve stem of the engine. The mechanism is lubricated by oil which flows down the push rod and the adapter and then by way of two slanting passages in the collar at the bottom of the adapter to the oil reservoir. The principle upon which the device is said to operate is that the oil supply flowing down to the reservoir is greatly in excess of the small amount being drawn into the cushion chamber, so that there is an overflow of oil over the edge of the reservoir which carries off any air bubbles past the cushion chamber inlet, so that only pure oil flows into the chamber. This is the feature which, Rice says, embodies the claimed novelty of his invention so far as claim 9 is concerned.

It is apparent on the face of claim 9 that it is completely functional at the precise point of the claimed novelty. The only structural elements described, the oil chamber with means for draining out the oil slowly, and an oil inlet, are old in the art. Novelty, if any, is found only in the remaining words of the claim. While the claim speaks of "means" for conducting the stream of oil, the claim states no specific means for carrying out the function, but only describes the function itself, or at most the scientific principles upon which the result depends. It describes the claimed invention in terms of what it will do rather than by describing its physical characteristics or its part or arrangement in the claimed combination. It has long been held that a function or result or principle of science is not patentable.

O'Reilly v. Morse, 15 How. 62, 56 U.S. 62, 14 L.Ed. 601. It has been pointed out that the vice in such descriptions is that if allowed they would extend the monopoly of the patentee beyond his actual invention to include all other means or devices by which the same function could be performed or the same result achieved. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. Rice's claim 9 is squarely analogous to the claim in Walker Patent No. 2,156,519 in which one element of the combination was described as "means associated with said pressure responsive device for tuning said receiving means to the frequency of echoes from the tubing collars of said tubing sections to clearly distinguish the echoes from said couplings from each other." Such a claim was held invalid in Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 8, 67 S.Ct. 6, 91 L.Ed. 3, for failure to make the "full, clear, concise, and exact" description of the alleged invention required by R.S. § 4888, 35 U.S.C.A. § 33.[1] Claim 9 of the Rice patent in suit must, therefore, be held to be invalid on its face as a purely functional claim.

A second ground for holding claim 9 invalid requires a consideration of the history of the Rice application as disclosed in the official Patent Office file wrapper. In the application as originally filed, dated September 3, 1929, the present claim 9 was not included, there was no mention of what was later added as an object of the invention, namely, the exclusion of air from the cushion chamber, and no description of the flow of oil through the reservoir past the inlet of the cushion chamber. In fact the oil flowing down the push rod was then described as collecting on the concave top of the oil chamber rather than flowing over it.

Amendments in May 1930 and March and September of 1931 did not mention this particular phase of the patent. On

[1] Since the Rice patent expired on October 23, 1951 the former 35 U.S.C.A. § 33 is applicable, and not the corresponding provisions of the Patent Act of 1952, effective January 1, 1953 and found in the new title 35 U.S.C.A. § 112.

October 27, 1931 the specification was amended to add to the statement of the object of the invention the words, "and to prevent the admission of the air to the cushion chamber and keep air out of it at all times." At the same time an amendment was added to the specification indicating that Rice's explanation as to how this was done was that the concave surface of the oil chamber formed a reservoir in which the oil collected not under pressure so that air in it was free to escape by gravity.

On October 26, 1932 an amendment added claim 19, which after amendment eventually became claim 9 as allowed. This contained the first mention of a "stream" of oil over the top of the oil chamber, and the claim was at first rejected "as failing to conform to the disclosure". Thereafter, on June 27, 1933, the specification was amended to include a description (now found on page 2, column 1, lines 39–58, of the printed patent) of the over-flow of oil to carry off air bubbles and prevent them from entering the oil chamber. This amendment was at first rejected as constituting new matter. Rice then filed a supplemental oath in which he swore that the subject matter of his amended claims was part of his invention and invented by him before he filed his original application. This amendment was later allowed, and claim 19, after further amendments, allowed as claim 9 of the issued patent.

To summarize, Rice now contends that the essence of his invention, so far as claim 9 is concerned, is that air bubbles are kept from entering the oil chamber by the flow of an excess amount of oil which carries these air bubbles beyond the inlet. There was nothing of this in his original application. In October 1931 the idea of keeping air from entering the chamber was brought forward, but only by means exactly opposite to what was finally set forth, since in his 1931 amendment the oil was still described as being collected and impliedly allowed to remain stagnant while gravity carried off the air bubbles, while the ultimate descrip-

tion in the issued patent is of the oil, not as collecting, but as overflowing in a constant stream to carry off the air bubbles. This latter element was first introduced into the application by Rice's amendment of October 26, 1932.

Meanwhile, in 1930, a lash adjuster was introduced in defendant's Cadillac and GMC trucks. This lash adjuster for the Cadillac was described in the magazine "Motor" for January, 1930, (defendant's Exhibit C) and that for the trucks in "Instructions for Care and Maintenance of the '616' Engine". Plaintiff admits that both of these were published and copyrighted not later than May, 1930. The Cadillac lash adjuster device is shown in the drawing on page 380 of Exhibit C, and its operation described on page 381. It includes an oil chamber from which there is a slight leakage of oil past a plunger at the bottom with a spring closed check valve at the top which when open admits oil to the chamber. This oil supply comes from the overflow of oil from the rocker bushing running down through a hollow piston to the check valve. In Exhibit D a similar adjuster for trucks is shown, in which the head of the adjuster plunger is described as being immersed in oil by overflow from pressure lubricated rocker arms, the bottom of the plunger head being provided with check valves to allow oil to feed down into the cylinder or oil chamber, with the plunger being fitted sufficiently loose in the cylinder to allow oil to escape. In both there are the same elements described by Rice, the oil chamber with an outlet for slow leakage from the chamber, an inlet for oil, and a steady flow of oil from the rocker arm flowing over the oil inlet.

In the deposition of Hallett offered by defendant, Hallett testified that the mode of operation of defendant's 1930 lash adjusters, with respect to exclusion of air by means of the flow of oil over the oil inlet was the same as that claimed for plaintiff's construction. Plaintiff has technically admitted this by failing to deny defendant's Supplemental Request for Admissions so far as its re-

quested admission that Hallett's description of the operation of these mechanisms was correct, or to state why admission or denial was not practicable. Rule 36, Fed.Rules Civ.Proc., 28 U.S.C.A.; 4 Moore's Federal Practice, (2d Ed.) p. 2719. Further, plaintiff has offered nothing by way of deposition or counter-affidavit to raise any question as to the correctness of Hallett's testimony. Moreover, since it is plaintiff's contention that the subject matter of claim 9 was inherent in the structure disclosed in his original application, it is difficult to see how he could deny it was also inherent in defendant's essentially similar structures.

■ Thus it is clear that the subject matter of the invention, if any, covered by claim 9 was not described or claimed by Rice in his original application, nor at any time before his amendment of October 26, 1932, more than two years after valve adjusters incorporating the same principle had been described in printed publications of defendant, and installed in vehicles sold by defendant. These facts provide another basis for holding claim 9 invalid. Under R.S. § 4886, former 35 U.S.C.A. § 31, as it read at the time when the Rice patent was issued, a claim is invalid if there was public use or sale of the device which it is claimed to cover more than two years before the first disclosure thereof to the Patent Office. This applies to disclosure by amendment as well as disclosure in the original application. Muncie Gear Works, Inc., v. Outboard Marine & Mfg. Co., 315 U.S. 759, 768, 62 S.Ct. 865, 86 L.Ed. 1171; Hazeltine Research, Inc., v. General Motors Corp., 6 Cir., 170 F.2d 6. Under R.S. § 4888, former 35 U.S. C.A. § 33,[2] a full disclosure of the invention in the original application was required. Hence it was held in Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 57, 573, 59 S.Ct. 8, 13, 83 L.Ed. 34, that "the application for a patent cannot be broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened."

■ Plaintiff contends that the substance of claim 9 was inherent in the structure disclosed in his original application, and hence that his amendments merely clarified his application rather than adding new matter. The most that can be advanced in favor of this argument is that the structure shown in the drawings of the original application will, Rice asserts, function in the manner and produce the result covered by claim 9. The drawings alone "are of no avail where there is an entire absence of description of the alleged invention, or a failure to claim it." Permutit Co. v. Graver Corp., 284 U.S. 52, 60, 52 S.Ct. 53, 55, 76 L.Ed. 163. Moreover, when the exclusion of air from the oil chamber, not mentioned in the original application, was added as an object of the invention, it was described as being brought about by the operation of gravity in a stagnant pool of oil collected in the reservoir. The ultimate description was that it was caused by the continuous flow of oil through the reservoir, the exact opposite of the earlier explanation. In a similar situation in the Schriber-Schroth case, supra, it was held that the patentee, having in his original application described the webs shown as "extremely rigid" could not validly amend his application to describe them as "laterally flexible".

■ Claim 9 must be held invalid, first, as claiming, on its face, only a function or result, and, secondly, as being an attempt to claim matter not contained in the original application and not disclosed to the Patent Office until more than two years after the disclosure and sale by defendant of devices covered by the claim. Since this invalidity appears in the one case from the face of the patent itself, and in the other from the Patent Office record of the case, and uncontroverted facts and admissions, the case is properly one for summary judgment. Bobertz v. General Motors Corp., 6 Cir.,

2. Now 35 U.S.C.A. §§ 111, 112.

228 F.2d 94; Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604.

Defendant's motion for summary judgment is allowed. The complaint is dismissed, and judgment will be entered for defendant on its counterclaim, adjudging claim 9 of Rice Patent No. 1,-977,778 invalid.