**DOLE REFRIGERATING COMPANY,**
Plaintiff,

v.

**AMERIO CONTACT PLATE FREEZERS,**
Inc., Defendant.

Civ. A. No. 1066-55.

United States District Court
D. New Jersey.
April 2, 1958.

Lum, Fairlie & Foster, Vincent S. Biunno, Newark, N. J., Norman S. Park-er, Arthur H. Boettcher and James G. Staples, Chicago, Ill., for plaintiff.

Dughi & Johnston, Michael J. O'Neil, Westfield, N. J., John P. Chandler, New York City, for defendant.

MEANEY, District Judge.

In August, 1955, plaintiff, Dole Refrigerating Company, gave defendant, Amerio Contact Plate Freezers, Inc., a written notice of a claimed infringement of a patent of which Dole was the assignee. The patent was Kleist No. 2,-436,389, concerning refrigerating plate and reinforcement of same. The complaint herein charges infringement and asks an injunction, an accounting and costs.

The defendant answers, denying the validity of the patent, and seeks dismissal of the instant action. Defendant has also filed a counterclaim seeking damages for unfair competiticn, which plaintiff denies.

### Facts

Plaintiff is the leading manufacturer of contact freezing plates. Defendant is a leading manufacturer of contact plate freezers. The latter contain contact freezer plates as part of a larger "console" type freezer unit. Defendant's product is purchased by producers of frozen foods. Plaintiff's double contact freezer plate is admittedly the most efficient in the field.

The patent in suit is concerned mainly with the interior mechanism of the freezer plate and its action on the faces of the plate. The heart of the claimed invention is the use of a rectangular coil arranged in a continuous series of bends (〰〰〰)[1] to achieve a rigid, strongly supported bending plate surface. The advantages of this system are manifest. The flat outer surface of the coil insures a greater heat-transference surface. The flat sides and outer surface insure a non-bowing rigidity and strength for the plate. The continuous and bent arrangement of the steel tub-

---

1. Suggestive drawing not to scale.

ing provides a path for the flow of the refrigerant and, further, the proximity of one coil to the next provides additional structural strength to the plates.

In function, this plate is very simple. A vacuum is created by the removal of all of the air from the interior of the plate. Thus, the metal surface of the plate is drawn flush with the coils situated between the plate's upper and lower surfaces. A refrigerant is then passed through the coils and packages of food placed between the plates are subject to the resultant refrigeration. In the freezing process the even surface and structural strength of the plates permit them to perform the ancillary function of compressing the food packages, rendering their outer surfaces uniformly flat.

### Discussion

Herman W. Kleist, to whom the patent in suit was issued, has been engaged in the development of contact freezing plates for many years. His efforts to make advances in that field have met with remarkable success, and he has continually endeavored to further the construction of more efficient apparatus to produce cheaper and more efficacious means of refrigeration. One problem to which he devoted his energies was that of producing a continuous flat surface rectangular tube which could be bent freely and thus provide a more desirable arrangement of the inner components of the freezer plate. The testimony indicates that some time in 1938 Kleist had devoted some thought to the problem, but his ideas were not reduced to practice to the satisfaction of the inventor until after Patent Application 2,436,389 was filed on September 4, 1945. In that application Claim I, which alone is in suit in the instant proceedings, reads as follows:

"1. In a vacuum plate adapted for use in refrigeration, and adapted to resist heavy pressures, a coil structure including a plurality of parallel rectilinear duct lengths and connecting bends, said rectilinear lengths being generally rectangular in cross section and having outwardly plane top and bottom walls and connecting outwardly plane side walls perpendicular thereto, all of said top walls having outer faces lying in substantially the same plane and all of said bottom walls having outer faces lying substantially in a single plane parallel to said first plane, a housing including walls sealed together around their edges, each said wall abutting against the plane surfaces of one side of said coil structure, and means for maintaining a partial vacuum in the space within said walls and about said coil structure sufficient to maintain said walls firmly pressed against, and in intimate contact with, the opposed generally plane top and bottom surfaces of the coil, said parallel rectilinear duct lengths being sufficient in number and being sufficiently closely spaced to form a reinforcement for said housing walls, and to maintain the outer surfaces of said housing walls generally plane."

In the specification (Col. 2, lines 16, 17, 18) the following statement is made: "In forming coils of rectangular cross section, it is not advantageous to bend the coil." It is well that this be kept in mind in view of the general picture.

Claim 2 reads as follows:

"2. The structure of claim 1 characterized by and including a eutectic liquid positioned within said plate in the space within said housing and exterior to said coil structure."

This claim for present purposes may be disregarded as no eutectic liquid is used in the defendant's product and the use of a eutectic liquid is questionable in its effect as a stimulus to heat transference, and is not in issue.

From the testimony in behalf of the plaintiff, it would seem that the first drawing of the subject of the patent in suit was made in November, 1938. This showed (1) a plate with a bent square

tube structure of a seemingly continuous nature, (2) a plate identical save for flattened oval structure of the apparently continuous tube.

Prior to November, 1938, Kleist patent 1,824,158 provided for the use of easily bent round tubes inside the plates.

About the time the first drawing of the square tube component of the freezing plate was made, there was a sense of immediacy anent the desirability of strengthening existing Kleist patents by taking out patents on the plates with square or oval tubes. Nothing was done by way of application for a patent at that time, and application was not made until September 4, 1945.

However, in the years 1941 and 1942 plaintiff sold to "Birdseye", which seems to be a company with which plaintiff had extensive dealings, certain plates with square tubes made continuous by mitered ends which were welded to the sections of square tubes. These plates were used by "Birdseye" as were certain smaller sample plates, of like construction, by Booth Fisheries.

Meanwhile Kleist had been experimenting with the problem of bending square tubing, calling in various other persons to assist in its solution, and in the latter part of 1945 or early in 1946 a satisfactory method was evolved. The application for Patent 2,436,389 was filed on September 4, 1945, before the successful method of square tube bending was attained. That patent application contained the statement that it was not advantageous to bend the square tube.

In June, 1947, an amendment was inserted in the specification of the patent in suit to the effect that the inventor did not want to be limited to a structure having separate connecting portions, which in effect would include bent square tubes.

For some years defendant purchased plates from plaintiff Dole for incorporation in its "consoles", and only after the passage of years did it decide to make the freezer plates itself according to its own design which is substantially the same as that of the plaintiff. The defendant at no time made use of a eutectic liquid in the inner portion of the plates.

The instant suit resulted from discovery by the plaintiff of the defendant's course of action in freezing plate manufacture.

Two questions are posed for the court: validity of the Kleist patent, which is the basis of the suit, and infringement of said patent by defendant.

In considering the question of validity, the answer is to be found in determining the presence *vel non* of inventiveness by reference to the product itself and to the prior art. To this court the claimed invention must rest on the creation of square tubes as the inner component of the freezing plate and the bending thereof so as to form continuous tubing.

The original freezer plate patented by Kleist in 1931 consisted of a sealed hollow plate from which air is exhausted and included a pipe (or tube) containing a refrigerant. The vacuum created in the plate caused the metal walls of the plate to be tightly pressed against the included pipe. Unquestionably this was a distinct contribution to the art and was extensively used commercially. This patent contained every feature of Claim I of the patent in suit except the square tubes.

In 1939 Kleist secured a patent, 2,405,432, for a cooling apparatus, involving the use of thin plates made of sheets of metal hermetically sealed, with a pipe therein formed into a coil and having flat sides which engage the sheets of metal, air having been exhausted from the plate so that the surfaces of the plate or the sheets would by atmospheric pressure from without press tightly against the pipe. Fig. 2 of Sheet 1 showed a sectional view of oval piping presenting a larger surface to come in contact with the inner side of the sheets of the containing plate than did the round piping of Kleist's earlier patent, 1,824,158.

The determination of patent validity and infringement has been the object of many attemptedly elucidating tests as set forth by various courts. It is not a simple matter to establish a rule which may be rigidly applied to every set of facts to arrive at an ineluctable conclusion. With the chain of examination going from the District Court to the Court of Appeals, to the Supreme Court, it has been somewhat loosely, if not inelegantly, said that in patent cases the last court's guess is the best, because the last. The "flash of genius" criterion has been so indefinite of definition that more comprehensible and applicable gauges have been suggested. In simple, plain terms Judge McLaughlin in this Circuit (the Third), in Fisch v. Gould, 246 F.2d 5, 7, referred to the "misuse of the dangerously attractive phrase" above referred to and set forth the criterion of "a new and useful result which called for more than the ingenuity of a mechanic skilled in the art" and "not anticipated by the prior art." This (or any other test so far devised) leaves much to the one called on to apply it, since there must always enter the personal equation present in all subjective considerations.

With this in mind, it is fair to assume that most people would recognize the new and useful result, calling for more than mere mechanical ingenuity, in the earlier Kleist Patent 1,824,158, issued in 1931.

Application for the patent in suit was filed September 4, 1945, though in 1938 there was discussion of an immediate application for a patent containing the substance of the one actually filed in 1945. Drawings had been made as early as November 28, 1938, in accordance with Kleist's ideas about the use of square tubing, and the only inferable reason for the delay in filing the application at that time would seem to be the inventor's dissatisfaction with discontinuous tubing and his continued quest for a method of bending a square tube. Meanwhile before the filing, plates were made with mitered square connections, and the evidence conclusively shows to this court that sales of such plates were made and the plates were in commercial use before the patent application. To be sure, in his testimony Kleist insistently refers to these and other similarly constructed plates as "experimental."

Some confusion may result from the operation of the mind of one not expert in the field of patents, and the sequence of events retailed herein may not be as orderly as might be prompted by more experienced analysts. However, it may be well now to refer to the prior art, as it was referred to in the patent, and as it has been indicated to the court. Patent 2,436,389, the patent in suit, contains as references cited, Kleist Patent 2,166,-161, July 18, 1939, and Barrath Patent 705,015, July 22, 1902. The first of these was the Kleist patent for cooling apparatus making use of vacuum plates containing pipes formed into a coil through which a refrigerant passes, said pipes being made of a metal which can be bent or changed in shape. The figures in the drawings portray round, not square tubes. The Barrath Patent 705,-015 referred to has to do with a congealing body or plate for ice making machines. Figures 2, 3 and 4 of the drawing represent pipes through which a refrigerant passes, said pipes being square, rectangular or parallelogrammatic. The specification refers to these pipes as extending parallel across the plate and connected at the ends by return bends. Barrath Patent 710,656 was not cited or considered by the Patent Office. This had to do with apparatus for the manufacture of plate or block ice. Fig. 3 in the drawings illustrates what is described in the specification as a platform internally provided with rectangular shaped tubes alternating with contiguous solid blocks. Through the tubes the freezing media (sic) is circulated for preparing the platform or medium for ice making. There is no considerable weight to be attached to the omission, because of its similarity to the earlier Barrath patent. Hence, the doctrine enunciated in Slagboom v. Van Vlaan-

deren Machine Company, D.C., 139 F. Supp. 785, does not of necessity apply.

Sufficient has been said to warrant proceeding to the question of validity of the patent in suit.

The first aspect of the matter to be passed upon is that relating to the presence or absence of invention, from the standpoint of production of "a new and useful result which called for more than the ingenuity of a mechanic skilled in the art" and non-anticipation by the prior art.

■ It seems to the court that the patent in suit represents merely an adaptation of that which already existed in the art and which required nothing more than mechanical skill to effect such adaptation. It was but a step from the flattened sides of the tubes shown in the drawings, Fig. 2 of patent application for cooling apparatus, filed March 20, 1939 (Patent 2,405,432), to the square tubes involved in the application involving the patent in suit. No more than mechanical ingenuity would be required to appreciate the structural advantage of substituting a square for an oval tube, and mechanical skill to construct same. Moreover, reference to the prior art (as comprehended in Barrath Patents 705,-015 filed December 6, 1901, issued July 22, 1902, and 710,656 filed May 31, 1902, issued October 7, 1902) would disclose the idea of square tubes. This court is of the opinion that there was lack of invention in the use of square tubes, despite the presentation of a new claim in the amendment of May 16, 1947, which included employment of a rectilinear tube, actually bent, and excluding limitation to separate tube lengths with separate connecting portions. This amendment is subject to two vices—it was submitted two years and five months after the original filing of January 8, 1945, of which application for patent in suit is to be regarded as a continuation in part. The bent square tube plates as finally approved by the inventor were produced at least as early as December, 1945. Thus it would seem that there was "public use or sale of the device"

a year and five months before the filing of the amendment which was filed a year and eight months after the filing date of the patent in suit, beyond the time limit set in the rules of the Patent Office. The "public use or sale of the device" on which a claim is made, refers to disclosure by amendment, as well as disclosure in the original application. Rice v. General Motors Corporation, 1 Cir., 140 F.Supp. 247; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 13, 83 L.Ed. 34.

■ It would further appear that the application was actually broadened by the amendment in a covert attempt to embrace the bending of square tubes in the patent without any disclosure of the way in which the tubes are to be bent. In the Schriber-Schroth case, supra, the court says, "the application for a patent cannot be broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened." In the case before the court the amendment, in so far as it pretends to cover bending of square tubes, embraces matters not contemplated in the patent in suit.

These considerations with the delay of over six years between the alleged making of the invention and the filing of the application (with intervening use for profit; see United States Chemical Corp. v. Plastic Glass Corp., 3 Cir., 142 F. Supp. 840) have influenced the court to arrive at the conclusion that the patent in suit is invalid and hence there could be no infringement. True, the defendant profited by the research and essays of the plaintiff's assignor, but that is not compelling reason for deviation from the determination which the court has made.

■ In so far as these findings apply to the counterclaim, the relief asked for in the counterclaim will be granted. Since no evidence of a nature satisfactory to this court was adduced at trial, the application of defendant for damages for plaintiff's acts of unfair competition will be denied. The defendant having

profited by the adaptation of the research and labor of plaintiff's assignor, the court in the exercise of its equitable discretion denies to defendant attorney's fees and costs.

This opinion may not be technically exegetic, but let it suffice for findings of fact and conclusions of law.

Let an appropriate order be submitted.