**SCOVILL MANUFACTURING COMPANY, Plaintiff,**

v.

**Murray DULBERG, Defendant.**

**EYELET SPECIALTY COMPANY, Plaintiff,**

v.

**Murray DULBERG, Defendant.**

**BRIDGEPORT METAL GOODS MFG. CO., Plaintiff,**

v.

**Murray DULBERG, Defendant.**

**RISDON MANUFACTURING COMPANY, Plaintiff,**

v.

**Murray DULBERG, Defendant.**

**Murray DULBERG, Plaintiff,**

v.

**ELIZABETH ARDEN SALES CORPORATION, Defendant.**

United States District Court
S. D. New York.

Nov. 25, 1960.

166

Emery, Whittemore, Sandoe & Graham, New York City, for Scovill Manufacturing Co. Nichol M. Sandoe, Hugo M. Wikstrom, New York City, of counsel.

Mitchell & Bechert, New York City for The Eyelet Specialty Co. Roy C. Hopgood, New York City, of counsel.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for The Bridgeport Metal Goods Mfg. Co. Thomas F. Reddy, Jr., John T. Farley, New York City, of counsel.

Morgan, Finnegan, Durham & Pine, New York City, for The Risdon Manufacturing Co. and Elizabeth Arden Sales Corp. George B. Finnegan, Jr., Jerome G. Lee, New York City, of counsel.

Alexander Dreiband, New York City, for Murray Dulberg.

Murray Dulberg, pro se.

METZNER, District Judge.

The plaintiffs, Scovill Manufacturing Company, Eyelet Specialty Company, Bridgeport Metal Goods Mfg. Co. and Risdon Manufacturing Company, instituted separate actions for declaratory judgment against defendant Murray Dulberg, seeking an adjudication of the validity of defendant's Patent No. 2,695,028. Defendant filed counterclaims for infringement of this patent against each of the plaintiffs and also filed counterclaims against Scovill for violation of a confidential disclosure and for unfair competition. This latter counterclaim was dismissed without opposition during the trial. In addition, Dulberg instituted an action against Elizabeth Arden Sales Corporation, charging infringement of Patent No. 2,695,028 and also Patent No. 2,-710,614. All of these actions were consolidated for trial.

The parties opposing the patentee are manufacturers of lipstick containers. It is their position that they did not infringe the patents and that the patents are void and invalid because of anticipation, prior public use and sale, prior invention and obviousness. In addition, they claim that the disclosure and claims relied on by the patentee do not appear in the original application, but in subsequent amendments which make them unavailable to the patentee in this lawsuit.

Before making specific findings of fact and conclusions of law, some general observations are in order.

The application for Patent No. 2,695,-028 was originally filed on September 24, 1948. The patent was finally issued on November 23, 1954, after numerous amendments had been filed with the Patent Office. The application covers a "Cosmetic Receptacle," the broad purpose of which was to combine various receptacles which could be used for a lipstick, lipstick brush, eyebrow pencil and perfume container, in an assembly that would take the form of a large fountain pen. The patent contained 52 claims, many of which were similar except for the use of different verbiage.

The essence of the patent which creates the main issue in this litigation is the use of a friction device (24 and 47) as a means of holding a cover cap over a container against longitudinal and rotary movement and in such a manner that a lipstick, for instance, could not be advanced within the container by turning the base finger piece.

The friction fit is obtained by providing on the container at least one projection which has been variously described as a: *"friction bump"* (Claim 2); "radially and permanently outwardly extending *projection"* (Claim 3); "permanently outwardly extending *hollow projection"* (Claims 5, 6 and 7); "elongated and longitudinally extending *rib"* (Claim 8); "longitudinally extending *ridge"* (Claims 39, 42, 43 and 45); "longitudinally extending *ridge* [which] is *hollow"* (Claim 40); "longitudinally extending *hollow rib"* (Claim 41); "elongated *hollow ridge"* (Claim 44); "permanently outwardly extending eccentric *hollow projection"* (Claim 51); "eccentric permanently outwardly *extending projection"* (Claim 52). In addition, Claim 9 provides for a "plurality of elongated *ribs* circumferentially spaced". [Emphasis supplied].

The claims further describe the cover cap as being made of a flexible metal which is distorted when it is placed upon the container and yieldable with respect to the container. The projections are described in various claims as "normally lying in the path of movement" of the cover cap and "resisting the movement" of the cover cap.

There was a great deal of testimony and discussion as to what the patentee meant and intended to disclose by the various descriptions of the projection which would create the friction fit, what was meant by "slidable contact," "path of movement," "distortion," "yielding," "flexible" and "resisting the movement."

Out of the mass of definitions and extended descriptions of what the patentee claims he invented, I find that he is referring to the formation of several,

equally spaced, hollow projections on a metal container or tubular member. No break appears in the metal when the projection is made and therefore it is integral to the container. The projection is longer than its width and the length of the projection is parallel to the axis of the container. The crest of the projection is elongated in shape. Any other description is not available to the patentee by his own testimony as to what he claims the state of the art to be, the problems of the manufacturers and what he was trying to disclose.

The use of a friction fit to hold a cap upon a container is old in the art. Where low-cost manufacture is called for, which does not permit of fine tolerances, use is made of projections and yieldable material to create a friction fit between the cap and the container. For a friction fit to result, there must be "slidable contact" between the members, some force must be used to place the cap over the container, and if a projection is used it must lie in the "path of movement" of the cap. Dulberg contends that by "path of movement" he intends the first contact between the cap and the container to be between the crest and the terminal edge of the cap. There is nothing in Dulberg's patent to describe this definition of the relationship. Furthermore, if the term is so limited it adds nothing to the art. In fact, I find that in the manufacture of caps for this type of container the terminal end of the cap has an infinitesimally greater inner diameter than the rest of the cap because that is necessary in order to remove the cap from the die.

When a metal cap is used, there must be some distortion when the cap is placed over the projections. This result is obtained even if the projection is a round bump, sheared rib or horseshoe tongue. The degree of resistance and the degree of distortion depend on the relative strength of the metal used in the container and the cover cap and on the height of the projections. These are not matters of invention, but of expertise of a skilled craftsman.

Consequently, Dulberg's use of the terms "slidable contact," "path of movement," "yieldable" and "distortion" discloses nothing new in achieving a friction fit.

What the patentee in effect has said is that, if you use his way of making a projection and the projections are in "spaced relationship," friction fit can be achieved at a lower cost and with better results.

I find from the testimony that, insofar as these manufacturers are concerned, the type of projection used was immaterial both from the point of view of cost of manufacture and from the point of view of their customers who purchased the containers. It is obvious from the testimony that, because of the lack of necessity for fine tolerances in the manufacture of this reasonably priced item, the die may be so fit to punch out the projections that some of the projections may end up as ridges, which is what the patentee is talking about, as well as ribs which are sheared on each side, which the patentee admits is not what he was really seeking. In fact, Dulberg testified that some of the projections on plaintiffs' Exhibits S43 and 238 were sheared and some were not, and that on an individual projection one side was sheared and one was not. In any event, whatever type of projection was used, the desired objectives were achieved.

It would appear that no matter what type of projection is used or in what direction it is placed, the function is the same, and longitudinal and rotary movement are prevented and protection is afforded against accidental advancement.

In addition to claiming that he has invented a method of creating a friction fit, Dulberg also claims that he has created a method to prevent the accidental advancement of a lipstick in the container when the cover cap is placed over the container. This prevention of the advancement of the lipstick is known in the trade as freewheeling. Dulberg admits that he did not invent freewheeling, but claims that he has shown the industry a way to create freewheeling, just as he

claims he showed the industry a way to create friction fit.

Dulberg's explanation or defense to anything that shows anticipation, prior use and obviousness is either that the witness perjured himself or that the physical exhibits were fabricated solely for the trial, or that the records submitted are forged or are not probative or corroborative of the testimony. Having observed the witnesses on the stand and examined the exhibits and the documents, I find these charges unsubstantiated.

The application for Patent No. 2,710,-614 was filed on June 27, 1952. The patent was issued on June 14, 1955. The application covers a "Duplex Rotary Holder," the purpose of which was to provide a single holder for two lipsticks of the freewheeling type, so that when one cover cap was removed the other would serve as the operating handle. Not only would the other cover cap be used as an operating handle, but it would also safeguard its own lipstick against accidental advancement.

It is claimed that two articles sold by Elizabeth Arden Sales Corporation infringed this patent. Claims 1, 6 and 7 of the patent are involved in this particular suit.

In essence, what the patentee has done is to take two freewheeling lipsticks and join them together at the base. His patent indicates that one piece of metal be used as a common base for both lipsticks. There is certainly nothing novel about this. One and one still make two.

In addition to the issues of the validity of Dulberg's patents and infringement thereof by the various plaintiffs, Dulberg has charged that Scovill Manufacturing Company breached a confidential relationship between the parties in that they took advantage of oral disclosures that he made to them in confidence during the period from September 1947 to March 1948. In conjunction with such conversations he exhibited a plastic model of a container, and subsequently, at Scovill's suggestion, had another model made by Mr. George Richter. He also claims that he told Scovill of the pending application for a patent, which was filed on March 19, 1947 and was issued on January 4, 1949 as Patent No. 2,458,063. Dulberg claims that, following these conversations and based on the information which he furnished Scovill, Scovill manufactured a Coty lipstick-perfume container, manufactured a single lipstick container embodying his ideas, and an employee of Scoville named Balasevich obtained a patent (No. 2,610,733).

In addition to the foregoing, I make the following findings of fact and conclusions of law:

### The Cosmetic Receptacle Patent

1. Beginning on the day the receptacle patent was issued, Dulberg sent notices of infringement through the public mails, not only to manufacturers of cosmetic receptacles or lipstick casings, including the four plaintiffs, but also to retail cosmetic manufacturers, department stores, and other retail outlets for cosmetics, many of which were customers of the four plaintiffs.

2. In the course of pre-trial proceedings, Dulberg notified each plaintiff of the patent claims which are charged to be infringed. The claims of the receptacle patent placed in issue are: 1, 2, 3, 5–11, 15–17, 19, 27, 32, 33, 37, 39–45, 51 and 52.

3. The receptacle patent is related to a receptacle for closely uniting four cosmetic articles of different types, e. g., an eyebrow pencil, a lipstick, a lipstick brush and a perfume bottle.

4. Friction fits and interference fits are generations old. They are achieved when metal is used, where perfect tolerances are not found, by having an inner member from which one or more projections have been forced out with an outer diameter at the height of the projections somewhat greater than the internal diameter of an outer member so that a momentary interference causes friction when the members are assembled.

5. The receptacle patent teaches that the lipstick assembly 11 is of the conven-

tional propel-repel type. Such lipstick assemblies have an inner shell with a longitudinal slot, which is surrounded by a sleeve having a spiral groove running from its bottom to its top. Surrounding the sleeve and frictionally in contact therewith for joint rotation is an outer shell. A cup for carrying the lipstick is inserted within the inner shell. The cup has a pin which projects through the longitudinal slot and into the spiral groove, so that rotation of the outer shell relative to the inner shell causes the carrier cup to advance and retract with the lipstick. The inner shell is commonly provided with a base or finger piece to facilitate this relative rotation.

6. At column 2, line 59, the receptacle patent states that advancement of the carrier cup 15 is prevented when the cover cap 10 encloses the assembly. This is a feature of lipsticks which is called "freewheeling."

7. In the conventional nonfreewheeling propel repel mechanism described above, any rotation of the outer shell relative to the inner shell or base causes the carrier cup to advance even when the cover cap is in place, so that the lipstick mass may be jammed into the inside of the cover cap. This difficulty is overcome in freewheeling constructions by designing the cover cap large enough to provide a clearance between it and the outer shell, and by designing the cover cap long enough to engage the base for a friction fit. With such an arrangement, relative rotation of the cover cap against the base does not cause relative rotation between the outer shell and the inner shell, and the lipstick is not advanced.

8. It is not necessary to use a bump or projection to achieve freewheeling. Nor is it necessary to use any particular type of material to achieve freewheeling. Either metal or plastic can be used.

9. The receptacle patent, at the top of column 2, states that the alleged invention may be made of any flexible, thin-gauged metal, plastic or any other desired material.

10. All of the accused articles are lipstick containers.

11. The claims of the receptacle patent in suit may be described, for convenience, in groups.

12. The first group of claims (42, 43 and 44) very broadly defines the invention as any frictional engagement, i. e., interference fit, between any article holder and cover cap that prevents the cover cap from falling off. The claims differ among themselves only in the verbiage which is used to describe the projection utilized to achieve the interference fit, e. g., an elongated or hollow ridge corresponding to element 47 of the patent drawing. This result may be achieved with any construction material, including metal or plastic.

13. The next group of claims (39, 40, 41, 51 and 52) is virtually the same as the first group of friction fit claims except that the claim verbiage calls for "two tubular members" instead of an article holder and a cover cap. Again, the structure recited by the claims includes a projection such as a ridge or rib to achieve the fit to prevent the second tubular member from falling off the first tubular member.

14. The subject matter defined in the first two groups of claims was fully disclosed by various prior art patentees.

15. Von Till Patent No. 2,064,042 was granted on December 15, 1936 for a friction cap and package. Mr. Von Till recognized the desirability of having a cap that was readily removable, yet not so loose as to fall off. His package included a metal container

"with a plurality of outwardly extending projections or ribs 10 adapted to be frictionally engaged by a suitable closure cap * * * these projections 10 are spaced at intervals and are substantially vertical, that is, their length is preferably greater than their width. However, other suitably shaped projections may be advantageously utilized. Preferably the projections are formed by striking portions of the metal * * *

radially outwardly during formation of the sifter top."

The patent further stated that:

"The vertical ribs 10 on the cam concentrate the pressure at several points about the periphery which permits the cap to deform slightly and take up the necessary size variations."

The resulting friction fit is "sufficiently tight to prevent accidental displacement and removal."

The projections 10 function in the same way to produce the same result as the projections 47 claimed in the first two groups of claims identified above from the receptacle patent.

16. Coe Patent No. 1,966,884 was issued on July 17, 1934. It discloses a lipstick container having "outwardly projecting lugs 18" on a metal outer shell 10 to engage and cause an interference and frictional fit with a metal cover cap 11. The lug is made by shearing its sides. It is a hollow sheared projection. These elements are essentially the same and function in the same way as the elements in the first two groups of claims of the receptacle patent to produce the same result.

17. Kendall Patent No. 1,994,074 was issued on March 12, 1935. The pertinent disclosure is similar to the prior-mentioned Coe patent in that a projection 14 is provided on the metal outer shell b of the lipstick container to frictionally engage the metal cover cap "when the cap is forced over the housing." But the projection 14 of the Kendall patent, as shown in figure, is hollow and integral with the outer shell b from which it is formed. The Kendall patent discloses the subject matter recited in the first two groups of claims of the receptacle patent.

18. The prior art Coryell Patent No. 2,074,016, issued on March 16, 1937, shows a lipstick construction generally similar to Kendall except that a "longitudinal rib or protuberance 13" is provided on the outer shell 12 to cause an interference fit with the cover cap 31 to take "care of any slight difference in dimensions caused in the manufacture of these parts." The construction material is plastic, although the cap may be made of metal.

19. The prior art patents above show that various types of projections for achieving interference fits between article holders and cover caps or between two tubular members, such as elongated hollow ridges, ribs integral with the shell from which they are formed, hollow sheared ribs, and solid elongated and longitudinal ridges, were all well known as interchangeble equivalents for holding a cover cap from falling off.

20. The third group of claims in the receptacle patent (1, 2, 3, 5, 6, 7, 10 and 32) applies the interference fit principle to freewheeling lipstick containers in that the claims specify means for preventing accidental advancement of the carrier. In essence, these claims differ among themselves only with respect to the verbal characterization of the projection that is utilized to create the interference fit. For example, claim 1 calls for no projection at all but requires only a frictional engagement between the cover cap and the base. Claim 2 simply calls for any friction bump. Claim 3 calls for a permanently outwardly extending type of projection. Similarly, this group of claims covers both metal and plastic materials.

21. The prior art Morrison Patent No. 2,309,000, filed in 1940 and issued January 19, 1943, is one of the first patent disclosures of a freewheeling arrangement to meet the problem of lipstick smudging caused by "inadvertent or accidental" advancement of the carrier cup when the cover cap is in place. The problem is set forth *in extenso* on page 1, column 1, lines 17–50, of the patent. He claimed a clearance or loose fit between the cover cap and the outer shell or casing for freewheeling, and the cover cap was held in place and permitted to rotate on the base by an annular bead.

22. On August 14, 1941, Howard Reichenbach filed an application for his Pat-

ent No. 2,337,682, which was issued December 28, 1943. In this patent freewheeling was achieved by providing the necessary clearance between the outer shell 10 and the cover cap 11, the cover cap being held in place by a "resilient" projection 24 on the base "which is adapted to frictionally engage the inner surface of the lower portion" of the cap. The projection 24 is sheared in the shape of a horseshoe.

23. Broder Patent No. 2,351,395 was issued on June 13, 1944. This patent discloses a conventional propel-repel mechanism in which the parts are all made of plastic. Freewheeling is achieved by the provision of a clearance between the outer shell D and the cover cap E. Friction bumps $A_8$ are provided on the base, equally spaced around it, to hold the cover cap in place. These friction bumps are permanently outwardly extending, elongated longitudinal, solid ridges. The freewheeling problem itself is described by Mr. Broder, starting at column 1, line 25. At column 2, line 13, he explains that the problem is solved by providing adequate clearance between the cover cap and the outer shell so that the relative rotation of the inner and outer shells is made impossible when the cap is in place.

24. On February 12, 1946 Broder filed an application for a second patent, No. 2,511,965, which was issued on June 20, 1950. This disclosure describes and illustrates a construction similar to the first patent except that some of the parts are made of metal. The friction nibs $A_8$ are hollow sheared spring fingers formed on a metal base element $A_9$ and they hold the cover in "spaced relation" to the outer shell. The cap E is preferably made of molded nylon (column 6, line 41), but Broder also illustrates in Figures 11–14 a lipstick construction wherein all of the parts including the cover cap are made of metal (column 6, lines 72–74). In addition, Broder describes the freewheeling problem and its solution, and he uses the expression "free wheeling" itself starting at column 1, line 23.

25. The drawings of the Broder Patent No. 2,511,965 and the prose of the patent referred to above are identical with the drawings and prose in the original application as filed on February 12, 1946, which is here in evidence as Plaintiffs' Exhibit 3.

26. On July 27, 1946, Broder filed another application which resulted in his Patent No. 2,511,966, which was issued on June 20, 1950. The lipstick structures illustrated and described in this patent are similar to Patent No. 2,511,965 except that the base or finger piece $A_7$ is made of solid material in Patent No. 2,511,965, whereas the correspondent parts in Patent No. 2,511,966 are made of sheet metal. In this instance, again, a clearance is provided between the outer shell 13 and the cover cap 28 for freewheeling with hollow sheared metal bumps 27 provided on the base to hold the cover cap in place by a friction fit. The written description of the patent again discloses the freewheeling problem and its solution and uses the words "free wheeling" themselves.

27. The drawings of Patent No. 2,511,966 and the prose in the patent referred to above are identical with the application filed on July 27, 1946, which is here in evidence as Plaintiffs' Exhibit 4.

28. The three Broder patent disclosures above disclose the subject matter of the third group of claims of the receptacle patent referred to in Finding No. 20 above.

29. Kaye Patent No. 2,456,948 discloses a conventional freewheeling construction similar to the Broder assemblies. Freewheeling is achieved by providing a clearance between the outer shell 12 and the cover cap 10, and the cover cap is held in place "by frictional contact, resilient humps 15 preferably being provided for this purpose" on the base member. Figure 3 of this patent shows a plurality of such "humps."

30. The Kaye patent does not describe the material from which the base is to be made. If it were made of metal

the resilient humps 15 would be hollow and sheared. If made of plastic the resilient humps would be solid.

31. The drawings of Kaye Patent No. 2,456,948 and the prose referred to above are identical with the application as originally filed on May 16, 1947, which is here in evidence as Plaintiffs' Exhibit 5.

32. A fourth group of claims in the receptacle patent consists of claims 8, 9 and 11. These claims are similar to the third group of freewheeling claims differing in the added requirement that the cover cap be of sufficient length to extend beyond the parting line between the outer shell and the base or finger piece to engage the finger piece or ribs on the finger piece.

33. The three prior art Broder disclosures and the Kaye patent referred to above all show a cover cap of sufficient length to extend beyond the parting line between the outer shell and the finger piece to engage the finger piece or ribs on the finger piece. Therefore, these prior art patents fully disclose the subject matter of claims 8, 9 and 11, for the same reason recited above in connection with the third group of claims.

34. The fifth group of claims consists of claims 16 and 17. These claims are not concerned with freewheeling, but instead are directed to a design whereby the cover cap may be placed in a reversed position on the finger piece for use as an elongated handle. The cover cap is held in place by a friction fit in both the normal and the reversed positions.

35. The prior art Wertheimer French Patent No. 560,135 was issued on June 30, 1923. It illustrates and describes a rotary lipstick assembly in which the cover cap c may be reversed and mounted on the base or finger piece f. The stipulated translation of the written description states that the function of the cap in reversed position is to permit a one-handed operation of the device. The cap in such position acts as an elongated handle. The cover cap c is held by a friction fit in both positions.

36. The prior art Lyhne Patent No. 1,781,852 was issued on November 18, 1930. Figure 7 of the patent shows that the cover cap 20 may be removed and mounted in reverse position on the base or finger piece to function as an elongated handle. The advantage of such an elongated handle is described on page 3, column 1, line 12.

37. The prior art Wertheimer and Lyhne patents fully disclose the subject matter of claims 15, 16 and 17.

38. The remaining claims in issue from the receptacle patent are not classifiable in groups. Of these, claim 19 is concerned with the provision of nibs or projections on both sides of annular bead to permit the cover cap to be held in two different positions with friction fits.

39. Except for the lack of nibs or projections to achieve the friction fits, the prior art Lyhne patent referred to above discloses the subject matter of claim 19. Lyhne's tubular member 11 has a raised annular bead 36 and the cover cap is seated directly on the tubular member by a friction fit as called for by the claim. In addition, the prior art Harris Patent No. 2,298,620 shows all the details of claim 19 including the raised annular bead 30 with the raised projections 46 and 48 on both sides thereof, to receive a cover cap in both positions.

40. Claim 27 of the receptacle patent calls for a conventional propel-repel lipstick assembly with the sole requirement that the base or finger piece must be hollowed out to receive pills, perfume or other material.

41. The prior art Harris Patent No. 2,298,620 shows a conventional propel-repel lipstick assembly with a hollowed-out base or finger piece 26 which houses a rubber applicator 40.

42. The prior art Coryell Patent No. 1,749,565 also discloses a conventional propel-repel lipstick assembly having a hollow base 1 which is hollowed out to hold perfume liquid. The prior art Harris and Coryell patents fully disclose the subject matter of claim 27.

43. Claim 33 is directed to a lipstick assembly having an inner shell connected to a wall end member by a mounting element so that the inner sleeve and the wall end member rotate together.

44. The prior art Harris Patent No. 2,298,620 discloses an inner shell with an extending portion 38 connected to the wall end member 38 by means of a mounting element 28, the parts functioning in the same way and producing the same result as the elements in claim 33 of the receptacle patent.

45. Claim 37 of the receptacle patent describes a tubular casing having an assembly mounted in each end thereof, such as the eyebrow assembly on the left of the Dulberg patent drawing and the lipstick assembly on the right-hand portion of the drawing. Upon reversal of the eyebrow assembly and rotation of the lipstick assembly, the lipstick is advanced in aligned relationship into engagement with the eyebrow pencil.

46. The prior art Lesquendieu Patent No. 1,643,815 was granted on September 27, 1927. It discloses a tubular casing 1 with an assembly at either end thereof, the assemblies being a dauber arrangement 9 at one end and a threaded cup containing ointment at the other end. When the cup is rotated, it advances in aligned relation to apply ointment to the ball 9.

47. The prior art Younghusband Patent No. 2,256,132 was issued on September 16, 1941. It discloses a tubular casing 14 using a perfume bottle 17 at one end and a conventional lipstick assembly 10 at the other end. Advancement of the lipstick will cause it to engage the perfume bottle in aligned relationship. Both the Lesquendieu and Younghusband patents disclose the subject matter of claim 37 and produce the same results in the same way.

48. Claim 45 of the receptacle patent covers a tubular appliance having two cover caps, one cover cap being mounted on ridges on each end of the appliance.

49. The same arrangement is shown in prior art Harris Patent No. 2,298,620 —Harris disclosing a tubular appliance with cover caps 22 and 38 seated on the opposite ends of the appliance by means of longitudinally extending ridges 36 and 38.

50. All of the alleged inventions defined in the claims in suit of the receptacle patent were known to others, were described in printed publications, and were patented by others more than one year before Dulberg filed the application for the receptacle patent.

51. In addition to the prior art patents disclosed above, the evidence shows some 42 separate examples of prior public knowledge, public use and public sale of commercial lipstick containers. These prior uses and sales were concerned with lipstick containers of various types beginning in the year 1932, including freewheeling as well as nonfreewheeling containers; metal, plastic and wood containers; and containers having permanently outwardly extending projections, hollow integral ridges or ribs, hollow sheared ridges or ribs, round bumps, elongated bumps, pimples, diagonally extending ridges or ribs, oblong ridges or ribs, longitudinally extending ridges or ribs, horseshoe bumps and solid bumps, for frictional engagement with cover caps. Some of these projections are equally spaced on the container or base. The proofs are summarized on Appendix A attached hereto.

52. Bridgeport's Embassy and D'Orsay powder cans were manufactured and sold in the mid-1930s. They were made of metal. The cap fit over the neck of the container which was provided with three, circumferentially spaced, narrow longitudinally extending integral hollow ridges.

53. The prior use evidence shows that the subject matter of claims 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 32, 39, 40, 41, 42, 44, 51 and 52 was in public knowledge, public use and on sale more than one year prior to Dulberg's application filing date for the receptacle patent, September 24, 1948.

54. The prior use evidence shows that all of the forms of friction projections for holding a cover cap in place on both freewheeling and nonfreewheeling containers, both metal and plastic, including hollow sheared ridges or ribs, hollow integral ridges or ribs, round bumps, elongated bumps, pimples, diagonally extending ridges or ribs, oblong ridges or ribs, longitudinally extending ridges or ribs, horseshoes and solid bumps were well known and long understood to be equivalents in the commercial art more than a year prior to the receptacle patent application filing date of September 24, 1948.

55. Containers with these various types of friction projections were sold in large quantities and satisfactorily meet the practical requirements of the art.

56. Hollow integral and hollow sheared nibs, ribs or ridges are equally useful from the manufacturer's view and cost about the same to make.

57. After more than 10 times normal use, the various types of friction means employed on the outer casings of lipstick containers to retain their cover cap in position were found to exert substantially the same friction as they did initially.

58. The file history of the receptacle patent shows that at the time of the original application no claims were presented to the Patent Office wherein Dulberg alleged that he was the inventor of a new type of friction fit or freewheeling.

59. It was not until the amendment of August 29, 1950 that Dulberg presented any claims to a lipstick container *per se*, or any claims that could have been infringed by the plaintiffs if granted.

60. Long prior to August 1950 each of the plaintiffs had sold millions of lipstick containers which were identical to or substantially the same as those now accused of infringement in this proceeding.

61. By August 29, 1950, when Dulberg first presented claims in the Patent Office to cover freewheeling lipstick containers, millions of such containers manufactured by plaintiffs had been on sale for more than one year.

62. All of the claims of the receptacle patent application were under rejection by the Patent Office on September 22, 1953. On that date Dulberg filed an extensive amendment which for the first time presented to the Patent Office any of the claims now in issue, and for the first time disclosed and described many of the features upon which Dulberg attempts to posit invention in the present proceeding.

63. Claims 3, 5, 6, 7, 8, 9, 10, 16, 17, 37, 39, 40, 41, 42, 51 and 52 require for their support the additions that were made to the written specification of the patent application on September 22, 1953. But for those additions the subject matter of those claims would not be found in the patent.

The Duplex Patent

1. The drawing of the patent shows a variety of arrangements for achieving these objects. All of the constructions consist of two lipstick propel-repel mechanisms back to back. In each instance, there are two inside shells, two spiral sleeves and two outside shells which upon relative rotation cause the lipstick carriers to advance or retract.

2. In the construction of Figure 1, for example, the two inside shells 1 are made of one piece of metal with an intermediate enlarged portion 3 which functions as a common operating handle. In Figure 2, the construction is the same except that the two inside shells 13 and the central handle 14 are made from separate pieces of metal press fitted together. Insofar as the function and operation and results of the device are concerned, it does not matter whether the inside shells are made from a single piece of metal as in Figure 1 or made from separate pieces connected by a connector as in Figure 2.

3. The structure illustrated in Figure 5 is similar to Figure 1 except that the central enlargement has a circumferential bead 28 and hollow integral ridges 30

on both sides of the bead. The bead 28 provides a shoulder to prevent the cover caps from running into each other and is very similar in construction and function to the bead 46 of the receptacle patent. The ridges 30 cooperate with the cover caps for freewheeling to perform the same function as the ridges of the receptacle patent.

4. Claim 1 of the duplex patent defines the invention essentially as two freewheeling lipstick containers held together back to back with an enlargement intermediate the ends thereof. Claim 6 is dependent upon claim 1 and adds the further requirement that the enlarged member has a raised annular means or bead for limiting the position of the cover caps and at least one ridge on each side of the bead. Claim 7 essentially calls for the same subject matter as claims 1 and 6 except that it requires more than one ridge on each of the base members or central enlargement.

5. The first accused article consists of two commercial freewheeling containers previously sold individually for several years (Risdon Model 4763). But, in the accused duplex form, the same containers are sold in pairs held together back to back by a rivet.

6. The second accused article (Risdon Model 4906) has essentially the same construction as the riveted container except that the bases of the two freewheeling containers are made from the same piece of metal so that a rivet is not necessary.

7. It has been stipulated that Elizabeth Arden Sales Corporation developed and began public sale of the first accused duplex lipstick container in May, 1952. Prior to that time, beginning in the 1930s, Elizabeth Arden Sales Corporation had a long history of manufacture and sale of duplex containers of the nonfreewheeling type with a common handle and two lipstick shades. One of these was called the "Night and Day" lipstick.

8. In developing the accused duplex freewheeling container, Elizabeth Arden Sales Corporation used two of the Risdon Model 4763 containers it had been selling previously and put the two together back to back with rubber cement and Scotch tape. Next, attachment of the two containers together by Elizabeth Arden Sales Corporation was tried with a little rivet. It was this riveted arrangement that was sold commercially and became accused here.

9. It may hold two different lipstick shades. When you remove one cover cap, the other cover cap may be used as an operating handle for the exposed lipstick carrier and at that same time the unremoved cover cap acts to safeguard against accidental advancement of its own carrier (i. e., it "free wheels").

10. The structure claimed in the duplex patent consists of two of the freewheeling lipstick assemblies 11 in the receptacle patent arranged together back to back.

11. Two freewheeling containers riveted or attached together back to back do not coact together to produce any result different from the two freewheeling containers in separate condition except for the convenience that one may be used as a handle to operate the other and two shades of lipstick are available.

12. The container made by Elizabeth Arden Sales Corporation meets all of the requirements of claims 1, 6 and 7 of the duplex patent.

13. The prior art patents show it to be obvious to arrange two lipstick assemblies together back to back for the convenience of using one lipstick as a handle to operate the other and for the convenience of having two lipstick shades available.

14. Freeman Patent No. 2,130,345 was issued on September 20, 1938. It shows two conventional propel-repel lipstick mechanisms held together back to back by a central member 43 for the convenience of having lipsticks of different shades. One assembly is used as a handle to advance the other.

15. Harris Patent No. 2,177,651 was issued on October 31, 1939. It shows two lipstick assemblies held together

back to back by an enlarged central member 10. Both assemblies are of the push-up type. The unremoved cap may be held as a handle when operating the lipstick at the other end of the device.

16. The French Crillon Patent No. 927,594 was published on November 3, 1947. It shows two propel-repel lipstick assemblies placed together back to back with the two inside shells 1 made from a single piece of metal and having a bulge or central enlargement number 2.

17. None of the above prior art patents are directed to freewheeling containers.

18. However, the lipstick container illustrated in the Kaye Patent No. 2,456,-948 is a freewheeling lipstick container. If two of these were put together back to back with solder or a rivet, the resulting construction would be the structure claimed in the duplex patent. It would perform all objects of the duplex patent and would function in the same way to produce the same results. One cover cap could be removed and the other cover cap could be used as an operating handle. At the same time the unremoved cover cap would act to safeguard its own carrier against accidental advancement, i. e., it would freewheel in the doubled form because it freewheels in the single form. All of the requirements of claims 1, 6 and 7 of the duplex patent, including the requirement of a central enlargement and ridges, would be met by the Kaye construction in doubled form.

19. Similarly, if one were to solder or rivet together two freewheeling lipstick containers as illustrated and described in the three Broder disclosures discussed above, the construction and function and results of all the details of claims 1, 6 and 7 of the duplex patent would be fully met.

20. In light of the prior patent teachings with respect to attaching two lipstick containers back to back so that one of the containers may be used as a handle to operate the other and to obtain two lipstick shades, it would be obvious and would require only ordinary skill in the art to put two freewheeling lipstick containers of the types disclosed by Kaye and Broder together for such advantages as well as the advantage of freewheeling which they already possess.

21. There is no evidence in the record showing that Dulberg constructed an embodiment of the alleged duplex invention prior to June 27, 1952. Similarly, there is no evidence of any disclosure to the Patent Office of the structure of the alleged duplex invention by Dulberg prior to June 27, 1952.

22. Although Dulberg filed some claims directed to the idea of a duplex lipstick holder during the prosecution of his receptacle patent application, there never was any disclosure in that application to support an alleged duplex lipstick invention because the drawing and written description of the receptacle patent application show but one lipstick assembly.

23. Accordingly, Dulberg did not reduce the alleged duplex invention to practice until June 27, 1952 and he is not entitled to any earlier filing date or date of invention.

24. Scovill Manufacturing Company began the manufacture of a duplex freewheeling lipstick container in April 1950. Five thousand of these containers were publicly used and sold to Roth & Steiner in March 1951, more than a year prior to June 27, 1952, the date when Dulberg filed the application for his duplex patent.

25. The Scovill duplex containers sold to Roth & Steiner in March 1951 correspond literally to every detail of claims 1, 6 and 7 of the duplex patent.

### Counterclaim for Breach of Confidential Relationship

1. On September 14, 1947 Dulberg called Mr. E. J. Hemlock, then sales manager in charge of Scovill's New York office, whom he had never met, and arranged to see him that day, and voluntarily disclosed to Hemlock his plastic model container D–87.

2. At this meeting Hemlock arranged for Dulberg to visit Scovill's Waterbury factory, and on September 15, 1947, Dulberg did visit the Waterbury factory and voluntarily disclosed his plastic model container to Scovill employees Robert L. McKnight and Harold F. Shotton.

3. During the visit on September 15, 1947, McKnight and Shotton gave Dulberg a supply of container parts for his experimental purposes and thereafter, from time to time, until December 1948, gave or sold to Dulberg small quantities of container parts to specifications and dimensions supplied by Dulberg.

4. Hemlock died in November 1947, and Shotton then advised Dulberg to call on Mr. Lamson M. Scovill of Scovill's New York office if he needed further assistance.

5. Dulberg called on Mr. Scovill in December 1947 and again early in January 1948. On the latter occasion Dulberg explained to Mr. Scovill that he was having difficulties and that 10,000 outside shells which he had purchased from Scovill had been spoiled. He desired to arrange for the purchase of a new supply of outside shells.

6. On this occasion Mr. Scovill gave Dulberg the name and address of Mr. George Richter, a model maker, and Dulberg subsequently engaged Richter to make a model for him, paying him $200 in advance.

7. During the course of Richter's work for Dulberg, Richter requested from Scovill, and Scovill supplied to Richter, certain container parts for use in the model for Dulberg.

8. Richter completed a model, D–88, but Richter and Dulberg disagreed about the work, and as a result Mr. Scovill arranged a meeting at his office on March 15, 1948 with Dulberg and Richter, at which time the matter was settled by Richter returning to Dulberg $125 of the $200 advance payment.

9. Dulberg confirmed this settlement by a letter to Richter dated March 17, 1948.

10. Richter requested Mr. Scovill to prepare a reply to Dulberg's letter of March 17, 1948, and the reply, dated March 19, 1948, was dictated by Mr. Scovill.

11. Said reply dated March 19, 1948 was duly received by Dulberg, together with Richter's check for $125.

12. Thereafter, until December 1948, Dulberg was in communication with Mr. Scovill on several occasions with regard to samples and quotations for parts for his container.

13. In December 1949 Dulberg discovered the so-called "Coty Memo" combination lipstick and perfume holder on the market and complained to Mr. Scovill that there had been a breach of confidence by Scovill.

14. The Dulberg plastic model was not disclosed to Mr. Scovill at any time.

15. The Richter model was not disclosed to Mr. Scovill at any time.

16. There is no evidence that the Richter model was disclosed to McKnight or Shotton at any time.

17. No drawings, sketches or writings descriptive of the Dulberg plastic model or of the Richter model or of the alleged inventions or ideas of Dulberg were disclosed to Hemlock, McKnight, Shotton, Mr. Scovill or any other Scovill employee at any time.

18. The features which are embodied in the Coty Memo container, which are alleged to have been copied from Dulberg, namely, (1) a tubular extension of the inner rotatable member of the lipstick mechanism, (2) this extension capacitated to hold material, (3) this extension serves as an operating handle, were all known to Scovill prior to September 1947 and are found in Coryell Patent No. 1,749,565 of March 4, 1930, and in the containers manufactured by Scovill (32–1051) under said patent and sold to Coty, Inc. in 1927, and in the Harris Patent No. 2,298,620 of October 13, 1942.

19. The features which are embodied in the Balasevich Patent No. 2,610,733,

and which are alleged to have been copied from Dulberg, were not, in fact, embodied in the plastic model or in any disclosure made to any Scovill employee by Dulberg except "a base capacitated to house material".

20. The containers manufactured and sold by Scovill under the Balasevich patent, which are alleged to embody features copied from Dulberg, do not, in fact, embody any feature embodied in the plastic model or in any disclosure made to any Scovill employee by Dulberg except "a base capacitated to house material".

21. The feature of "a base capacitated to house material" is found in Coryell Patent No. 1,749,565 and in Harris Patent No. 2,298,620 and was known to Scovill prior to September 1947.

22. The Scovill post-war standard freewheeling lipstick containers sold by Scovill beginning June 1948 do not embody any feature embodied in the plastic model or in any disclosure made to any Scovill employee by Dulberg.

23. All of the features embodied in Scovill's post-war standard freewheeling containers which are alleged to have been copied from Dulberg were embodied in Scovill containers manufactured and sold by Scovill in 1932 and 1933 or in Scovill development models.

24. Said development models were completed by Scovill as follows:

S–19 in 1943
S–22 in 1946
S–24 in January 1947
S–29 in August 1947

25. One or another of containers S–15, S–17 or said development models S–19, S–22, S–24 or S–29 embodies each of the following features:

a. Flush alignment between the outer shell and the base;

b. Slidable contact between the outer shell and the cover cap;

c. Permanently outwardly extending, longitudinally extending, elongated hollow ribs or ridges on the base;

d. Ribs or ridges on the base lying normally in the path of movement of the cover cap;

e. Ribs or ridges on the base which frictionally engage the cover cap to hold it on;

f. Ribs or ridges on the base which distort the cover cap when the cover cap is placed on the base.

26. The Dulberg plastic model was disclosed to American Brass Company on April 13, 1948.

27. The Dulberg inventions were disclosed to Lincoln Metal Products Co. at least as early as June 15, 1948, and as a result of such disclosure Lincoln Metal Products Co. prepared working drawings dated from May 27, 1948 to June 15, 1948.

28. Dulberg sent a copy of the Lincoln Metal Products Co. Drawing D–41 to Risdon in September 1948.

29. Copies of the Lincoln Metal Products Co. Drawings D–34 to D–41 were given to Bar-Ite Co. in October 1948.

30. Copies of the Lincoln Metal Products Co. Drawings D–34 to D–41 were given to Aversa & Martin in November 1948.

31. The said patent discloses all of the features of the plastic model D–87 except that in the plastic model the cover cap is held on by a metal ring, while in the patent the cover cap is held on by a screw thread.

32. The Dulberg advertising circular (Pl. Ex. 243) was published on September 21, 1949.

33. The first order for the Coty Memo container was not received by Scovill until March 31, 1949.

34. The first order for the Roth & Steiner combination lipstick and perfume container D–185 was not received by Scovill until April 19, 1950.

35. There is no evidence as to sales or dates of sales of Scovill containers D–188 or D–189.

36. No confidential relationship between Dulberg and Scovill was estab-

lished at any time by a mutually accept-able agreement.

37. No confidential relationship between Dulberg and Scovill can be implied from the acts or relationships of the parties.

38. Scovill did not at any time unfairly obtain information from Dulberg.

39. Scovill did not at any time use any information received from Dulberg for any purpose whatsoever.

40. The alleged "novel combinations" asserted to have been disclosed to Scovill by Dulberg were not, in fact, novel, but were known to Scovill prior to September 1947.

41. The issuance of Dulberg Patent No. 2,458,063 on January 4, 1949 was a dedication to the public, as of that date, of any and all features disclosed in the patent which were not protected by the claims thereof.

42. Upon the issuance of Dulberg Patent No. 2,458,063 on January 4, 1949 Scovill was free to use any feature disclosed therein which was not protected by the claims thereof.

### Conclusions of Law

The court has jurisdiction of the parties and the subject matter of these actions.

The use of a plurality of projections to achieve friction fit is not an invention because the function of the projection remains the same regardless of the number of them used. Carbice Corporation of America v. American Patents Development Co., 1931, 283 U.S. 420, 51 S.Ct. 496, 75 L.Ed. 1153.

The construction of the projections as claimed by Dulberg is not an invention because it is merely a

"substitution of equivalents which do substantially the same thing in the same way, even though better results may be produced, * * *." Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 330 [65 S.Ct. 647, 651, 89 L.Ed. 973].

At best, Patents Nos. 2,695,028 and 2,710,614 are a combination of old elements with no change in their respective functions, and therefore nothing has been added to the total knowledge already existing. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

Anticipation, prior public use and sale, and prior invention render invalid the claims in issue of Patents Nos. 2,695,028 and 2,710,614, pursuant to 35 U.S.C.A. § 102(a) and (b). These claims are also invalid because of the prior state of the art, indicating the obviousness of the disclosures and claims in issue here, pursuant to 35 U.S.C.A. § 103.

The claims in suit in Patent No. 2,695,028 were not presented until more than one year after plaintiffs' accused containers were in public use or on sale in this country and after Dulberg had knowledge thereof and are therefore invalid. 35 U.S.C.A. § 102(b); Muncie Gear Works v. Outboard M. & M. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L. Ed. 1171; Schriber-Schroth Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 573, 59 S.Ct. 8, 83 L.Ed. 34; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 1951, 192 F.2d 620, 627–628.

The patents in suit have not been infringed.

The claim by Dulberg against Scovill Manufacturing Company for violation of a confidential disclosure is dismissed for failure to prove the existence of a confidential relationship and the disclosure to Scovill of any construction not previously known by Scovill. See Restatement of the Law of Torts, § 757 and comments.

The application for award of attorneys' fees, pursuant to 35 U.S.C. § 285, is denied.

Judgment will be entered in favor of the plaintiffs, Scovill Manufacturing Company, Eyelet Specialty Company, Bridgeport Metal Goods Mfg. Co. and Risdon Manufacturing Company, with

costs. Judgment will be entered dismissing the complaint against Elizabeth Arden Sales Corporation, with costs to the defendant.

Formal judgment as above will be prepared by the plaintiffs and defendant Elizabeth Arden Sales Corporation and entered accordingly.

So ordered.